[Cite as *State v. Wheaton*, 2018-Ohio-1648.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27615 |
| | : | |
| v. | : | Trial Court Case No. 2017-TRD-961 |
| | : | |
| DASHAWNDA WHEATON | : | (Criminal Appeal from |
| | : | Municipal Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 27th day of April, 2018.

. . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, Assistant Prosecuting Attorney, City of Dayton, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

THADDEUS HOFFMEISTER, Atty. Reg. No. 0081977, 300 College Park Drive, Dayton, Ohio 45469
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} This case is before us on the appeal of Defendant-Appellant, Dashawnda Wheaton, from her convictions and sentences on charges of Operating a Motor Vehicle Without a Valid License, Leaving the Scene of an Accident, and Failure to Control.

{¶ 2} According to Wheaton, the trial court should have granted her motion for acquittal because the State did not prove that she failed to maintain reasonable control over her vehicle. Wheaton further contends that the conviction for failing to maintain reasonable control was against the manifest weight of the evidence because a trier of fact would have to suspend a belief in basic physics to conclude that the accident occurred as the State claimed. In addition, Wheaton argues that the trial court failed to properly examine witness credibility. Finally, Wheaton maintains that the State did not prove that she failed to furnish necessary information before leaving the scene of the accident.[1]

{¶ 3} For the reasons discussed below, we conclude that Wheaton's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 4} On December 27, 2016, Wheaton was driving a black Chevrolet Impala home from the grocery store when she became involved in an accident. The Impala belonged to another person and Wheaton did not have a drivers' license. After the accident occurred, Wheaton provided some information to the other driver, but left the scene before the police arrived. She did so because she was afraid she would be arrested for

---

[1] Wheaton is not challenging her conviction for driving without a license.

driving without a license.

**{¶ 5}** The Impala had a temporary tag, but the last number was missing. Ultimately, a police detective was able to trace the vehicle by using different databases, and ordered the vehicle's owner to come in for questioning. The owner then notified Wheaton, who called the detective and came in to see him. Wheaton did not dispute that she had been driving without a license, but contended that she was not at fault for the accident. At the meeting, the detective cited Wheaton for Operating a Motor Vehicle Without a Valid License in violation of R.C. 4510.12; Driving a Vehicle While Under F.R.A. Suspension, in violation of R.C. 4510.16; Failure to Control, in violation of Dayton Code of Ordinances ("D.C.O.") 71.1802; and Hit Skip, in violation of R.C. 4549.02.

**{¶ 6}** A bench trial occurred on March 28, 2017, after which the court found Wheaton guilty of all offenses other than the charge involving the F.R.A. suspension, which the State had dismissed prior to trial. The court then sentenced Wheaton to 180 days and a $250 fine for the Hit Skip, with the entire sentence and fine suspended; a class five license suspension, fifty hours of community service, one year of non-reporting community control; $150 for the Failure to Control, with the fine suspended, and 180 days in jail and a $250 fine for Operating a Motor Vehicle Without a Valid License, with both the jail time and the fine suspended. Wheaton timely appealed from the trial court's decision.

## II. Sufficiency and Weight of the Evidence

**{¶ 7}** Wheaton's first two assignments of error are interrelated and will be considered together. These assignments of error are as follows:

The Trial Court Wrongfully Denied Appellant's Rule 29 Motion for Acquittal Because the Evidence Provided by the State Was Insufficient to Prove the Appellant Did Not Maintain Reasonable Control of Her Vehicle, and;

The Guilty Verdict Was Against the Manifest Weight of the Evidence.

{¶ 8} Under these assignments of error, Wheaton contends that the trial court should have granted her motion for acquittal because the State did not prove that she failed to maintain reasonable control over her vehicle. She further contends that the conviction for failing to maintain reasonable control was against the manifest weight of the evidence because the trier of fact would have had to suspend a belief in basic physics to conclude that the accident occurred as the State claimed. In addition, Wheaton argues that the trial court failed to properly examine witness credibility.

{¶ 9} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted).   *Id.* at paragraph two of the syllabus.

{¶ 10} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."   (Citation omitted.)   *Wilson* at ¶ 12.   In this situation, a court reviews " 'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.   The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' "   *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *Accord State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence."   *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 11} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency."   (Citations omitted.)   *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11.   *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.).   As a result, "a determination that a conviction is supported by the

weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 12} Furthermore, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 13} As was noted, Wheaton was charged with having violated D.C.O. 71.1802, which provides that:

> No person shall operate a motor vehicle, trackless trolley, or streetcar on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle, trolley, or streetcar.

{¶ 14} The language of this ordinance is essentially the same as R.C. 4511.202(A) ("Operation without reasonable control"). "Reasonable control" is " 'the care or control that a cautious person would use under the same or similar circumstances.' " *State v. Stankus*, 2d Dist. Montgomery No. CA 11633, 1990 WL 102375, *3 (July 26, 1990), quoting *State v. Wisecup*, 2d Dist. Montgomery No. 11400, 1989 WL 101143, *2 (Aug. 31, 1989). *See also State Farm Mut. Auto. Ins. Co. v. Nanavati,* 11th Dist. Portage No. 99-P-0043, 2001 WL 20548, *6. (Citation omitted.)

{¶ 15} At trial, the State presented the testimony of the driver of the second vehicle involved in the accident, as well as three witnesses who were in that vehicle. According

to the State's evidence, the driver of the second vehicle was Willie Peavy, who was employed by the Montgomery County Juvenile Court as an E.R.C. specialist/probation officer. On December 27, 2016, Peavy and three other probation officers (Tawanda Thompson, India Byers, and Joyous Johnson), were conducting home visits to probationers, and were using a white van that belonged to Montgomery County.

{¶ 16} Around mid-day, Peavy drove the van to Parkhill Drive in Dayton, Ohio, and parked on the street near a curve. He stated that he was not parked near an intersection, and that the van was not far from the edge of the curb. The street was narrow and a number of cars were parked on the street. After the van was parked, two officers went into a house to do a home visit, and the others waited in the van. According to the testimony, only two probation officers will conduct home visits at a time, because having all four officers involved would be threatening.

{¶ 17} After the home visit was completed, Peavy and the others were sitting in the van, with the car in park. The testimony was conflicting concerning whether the van was running. Peavy indicated the engine was running, while others either could not recall or said the engine was turned on after the accident occurred.

{¶ 18} Peavy stated that he was taking notes, writing down what the parents had said about the child. At that point, a black Impala sideswiped the front bumper of the van on the driver's side.

{¶ 19} Thompson was sitting in the first passenger row behind the front seat. She was emailing another probation officer and testified that the van was not moving at the time of the accident. Thompson felt the impact, looked up, and saw a black Chevy Impala moving down the street. Byers was sitting in the third row of the van, on the

driver's side. She stated that the van was parked and was not moving because they had just gotten into the van. Byers was on her phone and did not see the collision. However, she felt the impact.

{¶ 20} Johnson was sitting in the front passenger seat of the van. She stated that when the accident occurred, the employees had finished up what they had to do at the location and were just getting back in the van. Like the others, Johnson said the van was parked. She did not really feel the impact, but heard it.

{¶ 21} The driver of the black Impala (later identified as Wheaton) stopped her car a little bit farther away from the van and got out. Peavy pulled the van up to where Wheaton's car was, and the four employees got out of the van. Peavy observed damage to the side of the front bumper of the van; the damage was on the driver's side and was basically a scrape. According to Peavy, the back of the Impala's bumper was scraped. Peavy denied ever telling the police that the damage was to the front of the Impala.

{¶ 22} After everyone got out of their cars, Wheaton said she did not have a license or insurance and was leaving. While Peavy was on the phone to his supervisor, Wheaton gave a name and address to Thompson. Both Peavy and Thompson could not recall the name that Wheaton provided, but they both stated that the name she gave was not Dashawnda Wheaton. Thompson indicated that she knew the name was not "Dashawnda" because that name was close to her own name and she would have remembered it.

{¶ 23} Wheaton stayed at the scene for between three and fifteen minutes (the estimates of the witnesses varied), and then left, even though the employees told her it was a crime to leave the scene of an accident. Wheaton was not there when the police

arrived to investigate.

{¶ 24} The State also presented the testimony of a detective and a police officer with the Dayton Police Department. Officer Hammond arrived at the accident scene around 2:30 p.m., and observed a large white van with several occupants. The driver of the other car was not there, and the occupants of the van gave her a temporary tag number from the Impala. Hammond included the number on her report, as well as where the occupants of the van thought the damage to the Impala was. As recorded on one police report, the damage to the Impala was located on the right front side.

{¶ 25} Detective Brown received a hit and run crash report for an accident on Parkhill Drive, and attempted to find the driver and owner of the vehicle. A supplemental report provided a temporary plate number, with the last number missing, and a description of the car. There was no owner information. After looking at different databases, Brown located a black Impala registered to Jacquita Clemons. Brown then sent Clemons an order and notification to come in and talk to him. Subsequently, Brown received a call from Clemons, who said she was not driving the car at the time and had lent the car to Dashawnda Wheaton. Wheaton then came in to speak with Brown on January 29, 2017. Wheaton told Brown that the van had pulled out in front of her. She said she did not stay at the scene because she did not have a driver's license and thought she would be going to jail.

{¶ 26} Based on the information he had, Brown issued citations to Wheaton for failure to exercise reasonable control, hit and run, and some license violations. He noted that Wheaton had showed him some pictures that showed damage to the rear of the Impala. What Brown believed was the final version of the police report showed damage

to the right rear side of the Impala. *See* Defendant's Ex. 3. Brown indicated that police reports are typically updated or supplemented during an investigation.

{¶ 27} After the State rested, Wheaton moved for acquittal under Crim.R. 29 on two grounds: (1) the State failed to prove that information was not exchanged at the scene; and (2) the witness statements indicating that Wheaton caused the accident were not credible because the damage was done to the rear of the Impala, not the front. The trial court overruled the motion, and Wheaton then testified. She also presented testimony from her stepdaughter, B.D.

{¶ 28} Wheaton admitted that she was driving without a license. She stated that on the day of the accident, she had borrowed her daughter, Jacquinta's, car, and had gone to a phone store and a grocery store. The occupants of her car consisted of B.D., two of Wheaton's own children, and a family friend.

{¶ 29} After leaving the grocery store, Wheaton drove down Prescott Avenue, stopped at a stop sign, and turned left on Parkhill Drive. Wheaton stated that as she turned left onto Parkhill from Prescott, she was hit on the back of her car. All she heard was a boom, and she stopped. When she got out of the car, a white van came up behind her. According to Wheaton, she talked to all the occupants of the van, and gave them her real name, address, and phone number. One of the women in the van had a clipboard and wrote down the name, address, and phone number.

{¶ 30} Wheaton stated that she left the scene after Peavy had called both his boss and the police, because she did not want to go to jail. She believed that Peavy had given her information to the police. After Jacquinta sent her a picture of a piece of paper that mentioned a hit and run, Wheaton called the police and told Detective Brown what had

happened. She did not show Brown pictures when she met with him. However, when she got home, she emailed Brown photos showing the damage to the Impala. (Defendant's Exs. 4 and 5).

{¶ 31} The citations were filed in Dayton Municipal Court on February 1, 2017. At the end of February or the beginning of March 2017, Wheaton took pictures of the entire vehicle. These pictures (Defendant's Ex. 6-10) showed no damage to the front of the Impala. Wheaton said the Impala had been sitting in her garage since December 27, 2016, and had not been driven because it needed tags. She did admit pulling the car out of the garage to take the pictures.

{¶ 32} As was noted, Wheaton denied losing reasonable control of the Impala; she stated that the van hit her as she was turning onto Parkhill Drive. She also said she was not guilty of the hit and run charge because she provided her real name and address. She admitted not furnishing the address of the owner of the car.

{¶ 33} Wheaton's witness, B.D., was seventeen years old and was sitting in the back seat of the car, behind the driver's seat. B.D. did not see the accident, as she was looking down at her sister's new phone and was not paying attention. She heard a big boom when they got hit, and looked up. That is when she saw the van. B.D. testified that the van was parked along Parkhill Drive and was not moving at the time of the accident. Transcript of Proceedings, p. 137-138. Later, B.D. stated that the van must have hit them because the Impala had the right of way. B.D. also testified that Wheaton had driven her to court on the day of trial.

{¶ 34} As was noted, after hearing the evidence, the trial court found Wheaton guilty of the three remaining charges and sentenced her accordingly.

{¶ 35} After reviewing the record, we find that the judgment is not against the weight of the evidence. While Wheaton denied being at fault, even her own witness indicated that the van was parked and was not moving at the time of the accident. As noted, we are mindful that the trier of facts is in the best position to judge credibility. *Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, at *4. Furthermore, ample testimony supported the trial court's decision.

{¶ 36} We also disagree with Wheaton's assertion that the State's account of the accident defies the laws of physics. As a preliminary point, Wheaton did not submit expert testimony. In addition, the pictures Wheaton submitted show scratches along the rear passenger side of the car, just behind the right rear wheel. There was no indication at trial that a "side-swipe" by a vehicle is only consistent with damage to the vehicle's front, rather than its rear, side.

{¶ 37} According to Wheaton, for the damage to occur, she would have had to drive at such a speed as to cause the rear of her car to drift into the front of the van as her car turned. However, this scenario requires that one accept two points that were controverted: (1) that the van was moving and was not parked; and (2) that the accident occurred very close to the intersection of Prescott and Parkhill, while Wheaton was turning left. However, Peavy testified that the van was not parked near the intersection. In addition, all the witnesses, other than Wheaton, testified that the van was parked and was not moving at the time of the accident. It is impossible for a parked car to hit another car, and the trial court did not err in concluding that Wheaton failed to exercise " 'the care or control that a cautious person would use under the same or similar circumstances.' " *Stankus*, 2d Dist. Montgomery No. CA 11633, 1990 WL 102375, at *3.

{¶ 38} Even if we eliminated the testimony of Wheaton's own witness, who contradicted herself, there were still four witnesses who testified that the van was parked when it was hit. Wheaton suggests that these witnesses were not telling the truth because Peavy needed a valid driver's license and a good driving record for his job. At best, this might provide a reason for Peavy to be less than candid; it would not be a reason for the other witnesses to commit perjury.

{¶ 39} Moreover, the trial court had reason to doubt Wheaton's credibility. Wheaton left the scene of an accident without disclosing her real name and address, and, while she was being tried for driving without a license, actually drove herself and a witness to court the day of trial. While Wheaton contends that she did provide her real name, the State's witnesses indicated otherwise. Again, the trial court was in the best position to assess credibility.

{¶ 40} Because the conviction for Wheaton's failure to reasonably control her vehicle was not against the manifest weight of the evidence, it was also not based on insufficient evidence. The trial court, therefore, did not err in overruling Wheaton's Crim.R. 29 motion for acquittal or in convicting Wheaton of Failure to Control.

{¶ 41} Based on the preceding discussion, the First and Second Assignments of Error are overruled.


III.   Stopping After the Accident

{¶ 42} Wheaton's Third Assignment of Error states that:

The State Did Not Sufficiently Prove That Appellant Failed to Provide

the Necessary Information Before Leaving the Scene of the Accident.

**{¶ 43}** According to Wheaton, the State failed to prove a violation of R.C. 4549.02 because she furnished sufficient information at the scene of the accident. In this regard, Wheaton makes two points: (1) she provided her name and address at the scene; and (2) she gave the information to probation officers, who should be equated with police officers for purposes of R.C. 4549.02.

**{¶ 44}** R.C. 4549.02(A)(1) provides that:

In the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop the operator's motor vehicle at the scene of the accident or collision. The operator shall remain at the scene of the accident or collision until the operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to all of the following:

(a) Any person injured in the accident or collision;

(b) The operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision;

(c) The police officer at the scene of the accident or collision.

**{¶ 45}** As we observed, "[a] sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." (Citation omitted.) *Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, at ¶ 10. The pertinent inquiry

in deciding sufficiency is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus.

{¶ 46} As indicated, R.C. 4549.02(A) requires identifying information to be given to both the operator of a motor vehicle damaged in an accident and to the police. Contrary to the statute, Wheaton gave information only to the operator of the van, not to the police. Wheaton contends, however, that probation officers are considered "police" under R.C. 2301.27(A)(1)(c), and that providing information to these officers at the scene satisfied the requirements of R.C. 4549.02(A)(1)(c).

{¶ 47} R.C. 2301.27 governs the establishment of county departments of probation, and states, among other things, in subsection (A)(1)(c), that "[p]robation officers have all the powers of regular police officers and shall perform any duties that are designated by the judge or judges of the court." Wheaton reasons that because she provided information to persons who are considered police officers that the purpose behind the notification provisions of R.C. 4549.02(A) was satisfied. However, this argument has been waived because Wheaton failed to present it to the trial court. *See, e.g., State v. Goss*, 2d Dist. Montgomery No. 21162, 2006-Ohio-836, ¶ 9 (arguments not presented to trial court are waived.)

{¶ 48} Even if such an argument had been presented, it would be irrelevant, because Wheaton failed to provide the information required by R.C. 4549.02(A). Under the statute, if the operator of a vehicle involved in an accident is not the owner, the operator must furnish "the name and address of the owner of that motor vehicle, together

with the registered number of that motor vehicle * * *." Even if one assumes that Wheaton provided her own name and address (which was disputed), she failed to provide the name and address of the owner of the Impala. Clearly, Wheaton knew the identity of the owner, as she testified that the car belonged to her daughter.

{¶ 49} R.C. 4549.02 is designed to give law enforcement officials sufficient information to conduct investigations. *State v. Bowman*, 10th Dist. Franklin No. 01AP-514, 2001 WL 1548796, *3 (Dec. 6, 2001). The statute makes no exception for providing partial information. The need for complete information is illustrated by the facts of the present case, since Detective Brown had to search various databases to discover the owner of the car. In addition, even though Wheaton allegedly left her name and address at the scene, the police were unaware of her identify until she contacted Brown at her daughter's request.

{¶ 50} Accordingly, the State presented sufficient proof to convict Wheaton of a violation of R.C. 4549.02(A). Wheaton's Third Assignment of Error, therefore, is overruled.

IV. Conclusion

{¶ 51} All of Wheaton's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.


Copies mailed to:

Troy B. Daniels
Thaddeus Hoffmeister
Hon. Deirdre E. Logan