[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bryant*, Slip Opinion No. 2020-Ohio-1041.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1041

THE STATE OF OHIO, APPELLEE, *v.* BRYANT, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bryant*, Slip Opinion No. 2020-Ohio-1041.]**

*Traffic—R.C. 4549.02(A)(1)—Fleeing the scene of an accident—Registered number of a motor vehicle—When a driver subject to R.C. 4549.02(A)(1) gives his name and address and the registered number of the vehicle to the required recipients under R.C. 4549.02(A)(1)(a) and (b), the driver does not violate R.C. 4549.02(A)(1) by not providing that information to a police officer if the driver leaves the scene without knowing that the police have been alerted of the accident—The "registered number" of a motor vehicle, as used in R.C. 4549.02(A)(1), is the license-plate number associated with the vehicle.*

(No. 2018-1418—Submitted October 22, 2019—Decided March 24, 2020.)

APPEAL from the Court of Appeals for Hamilton County, No. C-170570, 2018-Ohio-3756.

_____

FRENCH, J.

{¶ 1} Appellant, Michael Bryant, appeals the First District Court of Appeals' judgment affirming his conviction for leaving the scene of a motor-vehicle accident. This court accepted a discretionary appeal to address the statutory duties incumbent upon a driver who has been involved in an automobile accident. *See* 154 Ohio St.3d 1430, 2018-Ohio-4670, 111 N.E.3d 1191.

*Facts and procedural background*

{¶ 2} A complaint filed in the Hamilton County Municipal Court charged Bryant with driving under a financial-responsibility-law license suspension in violation of R.C. 4510.16, failure to control in violation of R.C. 4511.202, and leaving the scene of an accident in violation of R.C. 4549.02. Following a bench trial, the trial court found Bryant not guilty of driving under suspension but guilty of failure to control and of leaving the scene of an accident. The trial court stayed Bryant's sentences pending appeal.

{¶ 3} At trial, Elanor Everhardt testified that around 11:00 p.m. on March 16, 2017, a vehicle operated by Bryant hit the driver's side of her car while passing her on the left. Both Bryant and Everhardt pulled into a nearby parking lot and got out of their vehicles. Everhardt's sister, who was a passenger in Everhardt's car, remained inside the car. Everhardt testified that Bryant was stumbling, smelled of alcohol, and was unaware that he had been in an accident.

{¶ 4} Everhardt and Bryant talked in the parking lot for about an hour, during which time Bryant gave Everhardt his full name and phone number. Bryant told Everhardt he did not have a driver's license, but he let her take a photograph of his state identification. Everhardt also took a photograph of Bryant's license plate.

{¶ 5} Bryant asked Everhardt not to call the police because he had been drinking, was a drug dealer, and had drugs on him. Bryant offered Everhardt money not to call the police, but Everhardt refused. Nevertheless, Everhardt did not call

the police during their lengthy conversation. After about an hour, Everhardt got in her car. She called a tow truck and then the police.

{¶ 6} The record is unclear whether Bryant left the parking lot before or after Everhardt called the police, but Bryant had undisputedly departed before the police arrived at the scene. The record does not contain any evidence that Bryant knew Everhardt was calling or had called the police; neither is there evidence that Everhardt told Bryant that she would *not* call the police.

{¶ 7} Police Officer Weston Voss responded to the scene of the accident following Everhardt's call. He testified that although Everhardt had some information to identify Bryant, she did not have the registration number of Bryant's vehicle. Officer Voss filed charges against Bryant for failure to control his vehicle, driving under a license suspension, and leaving the scene of the accident.

{¶ 8} We are concerned here only with the charge of leaving the scene of the accident. With respect to that charge, the trial court concluded that Bryant failed to provide Everhardt with the registered number of his vehicle as required by R.C. 4549.02(A)(1). The court of appeals affirmed Bryant's conviction for leaving the scene of the accident on alternative grounds. Rather than addressing whether Bryant provided the registered number of his vehicle, the court of appeals held that Bryant violated R.C. 4549.02 by not providing the statutorily required identifying information to "[t]he police officer at the scene of the accident," R.C. 4549.02(A)(1)(c).

{¶ 9} This court accepted two propositions of law that present questions of statutory interpretation. The first concerns an operator's duty to give certain information to "[t]he police officer at the scene of the accident or collision" under R.C. 4549.02(A)(1)(c). The second concerns the meaning of "registered number" as it relates to a motor vehicle under R.C. 4549.02(A)(1).

*Analysis*

{¶ 10} R.C. 4549.02 states:

(A)(1) In the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop the operator's motor vehicle at the scene of the accident or collision. The operator shall remain at the scene of the accident or collision until the operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to all of the following:

(a) Any person injured in the accident or collision;

(b) The operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision;

(c) The police officer at the scene of the accident or collision.

{¶ 11} We begin our analysis with Bryant's first proposition of law, which concerns an operator's duty to give the information specified in R.C. 4549.02(A)(1) to the police officer at the scene. Bryant argues that when he left the scene an hour after the accident, there was no police officer present, and that absent knowledge that Everhardt was going to summon the police, he was not required to wait for an officer to arrive. The state, on the other hand, argues that when a police officer responds to the scene of an automobile accident within a reasonable time, a defendant must provide the statutorily required information to the police officer.

{¶ 12} A court's objective when construing a statute is to give effect to the legislature's intent. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 10. We seek legislative intent first in the statutory language. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16. If the statutory language is clear and unambiguous, we apply it as written, giving effect

to its plain meaning. *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, 950 N.E.2d 505, ¶ 14. Further interpretation is necessary only when the statutory language is ambiguous and subject to varying interpretations. *Chappell* at ¶ 16. When a statute defines a criminal offense, we construe the statute strictly against the state and liberally in favor of the accused. R.C. 2901.04(A).

{¶ 13} In 2016, the General Assembly amended R.C. 4549.02 and expanded the number of persons to whom an operator must provide the specified information. Prior to 2016, R.C. 4549.02, 2011 Sub.H.B. No. 5, required the operator to give the specified information to *any* of the individuals listed; the current version of the statute requires the operator to give the information to *all* of the listed individuals, including "[t]he police officer at the scene of the accident or collision," R.C. 4549.02(A)(1)(c). The dissenting opinion maintains that the General Assembly increased the duties that a driver has after a collision in order to afford the public greater protection against drivers who flee the scene of an accident. But even assuming that is true, it does not answer the question presented here—whether a driver may lawfully leave the scene of an accident or collision after providing the statutorily required information to all relevant persons under R.C. 4549.02(A)(1)(a) and (b), when there is no police officer at the scene and the driver is unaware that the police have been or will be summoned. This is not the case of a driver who attempted to evade identification.

{¶ 14} Bryant concedes that had a police officer been present with Bryant and Everhardt at the scene of the accident, he would have been required to provide the officer with his name, address, and registered number of his vehicle. But he argues that there was no police officer at the scene and that R.C. 4549.02(A)(1) did not impose a duty for him to wait for a police officer absent knowledge that Everhardt was going to call the police.

{¶ 15} The First District rejected Bryant's argument and held that Bryant violated R.C. 4549.02(A)(1) by not remaining at the scene to give his information

to a police officer. 2018-Ohio-3756, ¶ 20. It noted that Everhardt remained in the parking lot to call the police and did not tell Bryant she would not do so. Under these facts, the court concluded that Bryant was required to give his information to Officer Voss.

{¶ 16} In support of its decision, the First District cited *State v. Wheaton*, 2d Dist. Montgomery No. 27615, 2018-Ohio-1648, ¶ 46, but *Wheaton* is distinguishable. First, Wheaton fled the scene of an accident after the driver of the other vehicle had called the police and despite the other driver's warning that to do so was a crime. *Id.* at ¶ 23, 30, 46. Second, although the *Wheaton* court did state that R.C. 4549.02(A) required Wheaton to give her information to the police, Wheaton also failed to provide the other driver with the name and address of Wheaton's daughter, who owned the vehicle that Wheaton was driving—an independent violation of R.C. 4549.02(A)(1). *Id.* at ¶ 48.

{¶ 17} We read words in a statute in the context of the whole statute. *State v. Williams*, 79 Ohio St.3d 459, 462, 683 N.E.2d 1126 (1997). "Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative." *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 14. Here, that means considering R.C. 4549.02(A)(1) in context with R.C. 4549.02(A)(2), which states:

> In the event an injured person is unable to comprehend and record the information required to be given under division (A)(1) of this section, the other operator involved in the accident or collision shall notify the nearest police authority concerning the location of the accident or collision, and the operator's name, address, and the registered number of the motor vehicle the operator was operating.

6

> *The operator shall remain at the scene of the accident or collision until a police officer arrives*, unless removed from the scene by an emergency vehicle operated by a political subdivision or an ambulance.

(Emphasis added.) In contrast to R.C. 4549.02(A)(1), subdivision (A)(2) expressly requires an operator to remain at the scene until the police arrive. But R.C. 4549.02(A)(2) does not apply here because no one was injured in the accident.

{¶ 18} Were R.C. 4549.02(A)(1) read to require an operator to wait for a police officer in all circumstances, there would be no reason to specify in R.C. 4549.02(A)(2) that an operator must wait for the police to arrive after notifying them of the accident. The General Assembly could have imposed in R.C. 4549.02(A)(1) a duty to report an accident to the police or to wait until the police arrive, as it did expressly in R.C. 4549.02(A)(2), but it chose not to. We will not make a different choice. *See State v. Hughes*, 86 Ohio St.3d 424, 427, 715 N.E.2d 540 (1999) ("In construing a statute, we may not add or delete words").

{¶ 19} The state argues that "R.C. 4549.02 was amended with the expectation the police must be given a reasonable amount of time to respond to accidents, which is exactly what Officer Voss did in the present case." It argues that Bryant's reading of R.C. 4549.02(A)(1), which was adopted by the dissent in the court of appeals, essentially requires a police officer be an eyewitness to an accident before a duty arises under R.C. 4549.02(A)(1)(c) to provide the information to the police. Bryant, however, does not contest that had a police officer arrived at the scene while Bryant was present, he would have been statutorily obligated to provide the officer with the information specified in R.C. 4549.02(A)(1). Nor does Bryant dispute that the phrase "police officer at the scene," R.C. 4549.02(A)(1)(c), includes an officer who responds to the scene within a reasonable time or that Officer Voss responded to Everhardt's call within a

reasonable time. But this case is not about Officer Voss's or any officer's response time; it is about whether Bryant had an obligation to remain at the scene after his hour-long conversation with Everhardt in case she decided to call the police. We conclude that the plain language of R.C. 4549.02(A)(1) did not require him to do so.

{¶ 20} As the First District acknowledged, there is no duty to call the police after every motor-vehicle accident. 2018-Ohio-3756 at ¶ 19. Accordingly, a police officer will not always respond to the scene of a motor-vehicle accident. If there is no "police officer at the scene," an operator does not violate R.C. 4549.02(A)(1) by failing to provide the specified information to a police officer.

{¶ 21} To be clear, we do not decide the contours of Bryant's duty had the state presented evidence that Everhardt stated that she was going to call the police or that Bryant possessed actual knowledge that she had called or was going to call the police. It is enough that Bryant remained at the scene for a reasonable amount of time, that he complied with R.C. 4549.02(A)(1)(a) and (b), and that there is no evidence that Bryant knew, when he left, that Everhardt had called or was going to call the police.

{¶ 22} The state maintains that our interpretation of R.C. 4549.02(A)(1) absurdly incentivizes an impaired operator to flee the scene of an accident before the police arrive. It points to testimony received by the General Assembly in relation to the 2016 amendments to R.C. 4549.02 as evidence that the goal behind the amendments was to deter impaired driving. But "[i]n construing a statute, this court's duty is to give effect to the General Assembly's intent *as expressed in the language it enacted.*" (Emphasis added.) *State v. Braden*, ___ Ohio St.3d ____, 2019-Ohio-4204, ___ N.E.3d ____, ¶ 17. *See also In re Torok*, 161 Ohio St. 585, 589, 120 N.E.2d 307 (1954), citing *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902) (the question "is not what did the General Assembly intend to enact but what is the meaning of that which it did enact"). Here, the General Assembly

8

requires an operator to remain at the scene until a police officer arrives under the circumstances detailed in R.C. 4549.02(A)(2) but does not do so under the circumstances detailed in R.C. 4549.02(A)(1). Objections to the policy implications of applying R.C. 4549.02 as written are properly addressed to the General Assembly, not to the courts. *See Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 61 ("it is not the role of the courts to establish their own legislative policies or to second-guess the policy choices made by the General Assembly").

{¶ 23} We conclude that the plain, unambiguous language of R.C. 4549.02(A)(1) does not require an operator of a motor vehicle who has been involved in an accident or collision to remain at the scene until a police officer arrives when that operator has provided the information required by R.C. 4549.02(A)(1) to the other persons involved in the accident or collision under R.C. 4549.02(A)(1)(a) and (b) and when that operator is unaware that the police have been or will be summoned.

{¶ 24} Bryant's second proposition of law concerns the meaning of "registered number" of a motor vehicle under R.C. 4549.02(A)(1). Bryant maintains that a vehicle's "registered number" is its license-plate number. The state disagrees and argues that the term refers to a separate "registration number" assigned as part of the vehicle-registration process. The issue here is whether Bryant complied with the statutory requirement to give Everhardt the "registered number" of his vehicle when Everhardt was able to photograph his license plate. The trial court answered that question in the negative. But despite finding the term "registered number" ambiguous, the court of appeals did not decide its meaning, because it decided the appeal wholly on its erroneous determination that Bryant violated R.C. 4549.02 by not providing the statutorily specified information to Officer Voss.

**{¶ 25}** We agree with the First District's determination that "registered number," as used in R.C. 4549.02(A), is ambiguous. 2018-Ohio-3756 at ¶ 18. At oral argument before this court, the state conceded that the term, which neither the Revised Code nor the Ohio Administrative Code defines, is ambiguous. To resolve ambiguity in statutory language, we must rely on additional means of statutory interpretation. *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 13.

**{¶ 26}** Application of the in pari materia rule of statutory construction clarifies the meaning of the ambiguous term "registered number" here. Under that rule of construction, a court must read all statutes relating to the same general subject matter together, in a manner that gives proper force and effect to each one. *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994). Here, we read R.C. 4549.02(A) in pari materia with Ohio statutes governing registration and licensing of motor vehicles.

**{¶ 27}** When the owner of a motor vehicle first applies to register that vehicle and pays the required fee, the registrar of motor vehicles or a deputy registrar "shall assign to the motor vehicle a distinctive number and issue and deliver to the owner * * * a certificate of registration." R.C. 4503.19(A)(1). The registrar or deputy registrar then delivers to the owner license plates, R.C. 4503.19(A)(2)(a), which show "the distinctive number assigned to the motor vehicle as provided in section 4503.19 of the Revised Code," R.C. 4503.22. The owner or operator of a motor vehicle must display on the front and rear of the vehicle "a license plate that bears the distinctive number and registration mark assigned to the motor vehicle." R.C. 4503.21(A)(1). Those statutes do not use the term "registered number," but they establish that a vehicle's license-plate number is the distinctive number assigned to the vehicle upon registration. That "distinctive number" is the only number that the statutes require to be assigned as part of the vehicle-registration process.

{¶ 28} Bryant's argument that "registered number" means a vehicle's license-plate number is consistent with statements in Ohio Department of Public Safety, *Digest of Ohio Motor Vehicle Laws*, https://publicsafety.ohio.gov/links/hsy7607.pdf (accessed January 10, 2020) [https://perma.cc/S9A7-LN7X]. That publication instructs a motor-vehicle operator, in the event of a crash, to gather from other drivers names, addresses, dates of birth, license-plate numbers, and driver's-license numbers. It does not mention "registered numbers," nor does it recommend the exchange of any numbers other than the license-plate numbers to identify vehicles involved in the crash.

{¶ 29} Bryant and the state each cite Ohio appellate cases in support of their respective positions regarding the meaning of "registered number," but the cited cases are not particularly persuasive. Bryant cites two cases involving local ordinances that, like R.C. 4549.02(A)(1), required the operator of a vehicle to provide the vehicle's "registered number." In *Dayton v. Garman*, 2d Dist. Montgomery No. 17042, 1999 WL 12727, *2 (Jan. 15, 1999), the Second District stated that "the 'registered number' of [a] vehicle is, in modern parlance, the license plate number," but it did so in reliance on the parties' undisputed assertions and without any additional analysis. Similarly, the parties in *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, did not dispute that "registered number" under a local ordinance meant a vehicle's license-plate number. In *Crowe*, however, the Ninth District affirmed the defendant's conviction on other grounds— that he failed to provide the other driver with his identity and address. *Id.* at ¶ 23.

{¶ 30} The state cites another First District decision in support of its position that a license-plate number is not the same as a vehicle's "registered number." *See Cincinnati v. Roseburrough*, 1st Dist. Hamilton Nos. C-77339 and C-77340, 1978 WL 216491 (Mar. 8, 1978). *Roseburrough*, however, fares no better than *Garman* or *Crowe* at providing meaningful insight. Roseburrough left

the scene of a motor-vehicle collision "without * * * having supplied in any manner his name, address or the registration number of [his] motor vehicle." *Id.* at *1. Although the First District recognized that a witness had taken down Roseburrough's license-plate number, it is not clear that the court was making any determination about whether the license-plate number was equivalent to the "registered number" under R.C. 4549.02. In any event, that determination was unnecessary in light of Roseburrough's failure to supply his name and address; that failure, standing alone, constituted a statutory violation.

{¶ 31} In a final argument, the state contends that even if a vehicle's "registered number" is its license-plate number, Bryant still failed to comply with R.C. 4549.02(A)(1) because he did not *affirmatively give* Everhardt his license-plate number. The state points to *Garman*, in which the Second District stated that the Dayton ordinance required the operator affirmatively to give his license-plate number. But the Second District importantly stated in *Garman*, "our conclusion would be otherwise if, before leaving the scene, the driver is made aware that the other driver, or a police officer, has already recorded his license plate number." *Id.* at *2. Here, the state presented no evidence to suggest that Bryant was unaware that Everhardt had taken a photograph of his license plate. *Garman*, therefore, does not support the state's position.

{¶ 32} Other cases that the state cites involve drivers who fled without providing any of the information required by R.C. 4549.02. *See State v. Skinner*, 7th Dist. Mahoning No. 05 MA 56, 2006-Ohio-3486; *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868; *State v. Maioriello*, 73 Ohio App.3d 350, 597 N.E.2d 185 (5th Dist.1992). In those cases, even if obtaining the fleeing driver's license-plate number had extinguished that portion of the duty set forth under R.C. 4549.02(A)(1), the fleeing driver still violated the statute by leaving without providing his or her name and address.

{¶ 33} Bryant provided Everhardt with his complete name, address, and phone number and allowed her to photograph his state identification, and Everhardt was able to photograph Bryant's license plate. Under these circumstances, Everhardt possessed all the information Bryant was required to give, and R.C. 4549.02(A)(1) did not require Bryant to take any additional, affirmative act to comply with the statute.

*Conclusion*

{¶ 34} For these reasons, we adopt Bryant's propositions of law. We hold that the "registered number" of a motor vehicle, as used in R.C. 4549.02(A)(1), is the license-plate number associated with the vehicle. And when a driver subject to R.C. 4549.02(A)(1) gives the information specified in that statute to the required recipients under R.C. 4549.02(A)(1)(a) and (b), the driver does not violate R.C. 4549.02(A)(1) by not providing that information to a police officer if the driver leaves the scene without knowledge that the police have been alerted of the accident. We reverse the judgment of the First District Court of Appeals and vacate Bryant's conviction for violation of R.C. 4549.02(A)(1).

Judgment reversed

and conviction vacated.

FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

O'CONNOR, C.J., dissents, with an opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 35} I agree with the majority's holding that the "registered number" of a vehicle, as the term is used in R.C. 4549.02(A)(1), is the license-plate number associated with the vehicle. I dissent, however, from the majority's holding on the first proposition of law. R.C. 4549.02(A)(1) requires the operator of a motor vehicle involved in an accident to "remain at the scene" and provide the information

listed in that section to a police officer at the scene. In my view, whether a driver complies with that duty depends on the totality of the circumstances, and, in this case, there is sufficient evidence to enable a reasonable fact-finder to conclude that appellant, Michael Bryant, failed to comply with that duty.

## I. Analysis

### A. The Proper Interpretation of R.C. 4549.02(A)(1)

{¶ 36} R.C. 4549.02(A)(1) provides:

> In the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop the operator's motor vehicle at the scene of the accident or collision. The operator *shall* remain at the scene of the accident or collision until the operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to *all* of the following:
>
> (a) Any person injured in the accident or collision;
>
> (b) The operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision;
>
> (c) The police officer at the scene of the accident or collision.

(Emphasis added.)

{¶ 37} Unlike criminal statutes that are prohibitory in nature, R.C. 4549.02(A)(1) creates a duty to act. The duty requires the driver to take several actions. First, once the driver has knowledge of the accident, the driver "immediately shall stop * * * at the scene." The driver must then "remain at the scene * * * until" the driver "has given" the driver's "name and address and * * *

the registered number" of the vehicle to certain individuals. Finally, relevant here, the driver must give that information to "[t]he police officer at the scene of the accident or collision." R.C. 4549.02(A)(1)(c).

{¶ 38} As the majority correctly observes, there is no general duty to notify police after a collision in all circumstances. And even when a party to an accident does notify the police immediately after an accident, the police may decline to send an officer to the scene due to other demands on limited police resources. Nonetheless, in the present case, the driver of the car hit by Bryant, Elanor Everhardt, did call the police and an officer arrived in a reasonable time after the call. The question we must consider is whether Bryant complied with his duty to "remain at the scene" until he gave the required information to "[t]he police officer at the scene."

{¶ 39} In my view, R.C. 4549.02(A)(1) requires that a driver's actions after an accident or collision be judged under the totality of the circumstances. When a driver leaves the scene before any officer is present, the driver fails to comply with his or her duty if the driver either does not remain at the scene long enough to determine whether an officer is likely to arrive or remains at the scene but leaves when the circumstances indicate that an officer is likely to be notified of the accident.

{¶ 40} This interpretation is faithful to the text of the statute, which does not contain any additional detail on what exactly a driver must do to fulfill the duty it creates, for example, by requiring the driver to stay for a specific period of time. It is also flexible enough to allow for the statute to be applied in the many different circumstances presented by accidents and collisions on public roads. The drivers in an accident may explicitly agree not to call the police, or they may call and, if the response time is too long, eventually agree to leave. In all cases, however, it is reasonable to determine that the statute calls for the parties' actions to be judged

according to the totality of the circumstances. And by doing so, the statute creates an effective means to combat the problem of a party to an accident fleeing the scene.

{¶ 41} The facts of the present case clearly show that although Bryant remained at the scene for about an hour, an officer had likely been notified before he left the scene. As a result, Bryant failed to comply with his duty under R.C. 4549.02(A)(1)(c).

{¶ 42} According to Everhardt, Bryant's car had two flat tires from the collision. When she got out of her car to speak with Bryant, Everhardt left her phone in her car and told her 16-year-old sister to call the police. This clearly shows that Everhardt intended to call the police to the scene. She also locked the doors of the car out of a concern for her sister's safety. As a result of a miscommunication, however, Everhardt's sister did not call the police at that time.

{¶ 43} When she began speaking with Bryant, Everhardt noticed that he was stumbling and smelled of alcohol. Bryant also made a number of incriminating statements. Everhardt testified that Bryant told her that he did not have insurance or a driver's license and that he had been drinking. He also stated that he was a drug dealer and that he had drugs on him—admissions that did not necessarily relate to the accident itself and that, if discovered by an officer at the scene, could have exposed Bryant to more significant criminal penalties. While making these admissions, Bryant asked Everhardt not to call police and said that he "meant [her] no ill will." According to Everhardt, Bryant repeated these statements "for the entire hour." But Everhardt never agreed not to call the police. In fact, Everhardt had already instructed her sister to call the police by the time she got out of her car and began speaking with Bryant. At one point, Everhardt also told Bryant that she wanted to call the police. When they finally ended their conversation, Everhardt got back into her car and placed a call to the police. Meanwhile, Bryant left the scene, driving away in his car, despite the fact that it had two flat tires.

{¶ 44} In my view, a reasonable fact-finder could have concluded from this evidence that Bryant failed to comply with his obligation to remain at the scene. Although the record is unclear regarding whether Bryant had actual knowledge that Everhardt was calling the police when she returned to her car, the facts support a conclusion that Bryant believed she likely would be calling the police at that time.

{¶ 45} Bryant expressly asked Everhardt not to call the police. His incriminating statements could also be seen as part of his attempt to pressure her into not calling the police. Specifically, a reasonable fact-finder could have believed that Bryant was attempting to make Everhardt, who was 20 years old at the time, believe that calling the police to deal with the accident would be unfair to Bryant because it would expose him to additional, harsher penalties, since he had been drinking and had drugs in his possession. But Bryant's efforts were ultimately unsuccessful. After pressuring Everhardt for an hour, Bryant received no assurance from her that she would not call the police.

{¶ 46} A reasonable fact-finder could have concluded that when Everhardt returned to her car, Bryant believed she *would* be calling the police and that he left the scene precisely because he wanted to avoid any interaction with the police. And the fact that Bryant drove away on two flat tires—which made his car unsafe to drive and created a risk to his safety and the safety of anyone on the road at that time—suggests that he believed the police would arrive soon and that his desire to avoid interacting with the police was strong.

{¶ 47} Given all of this, a reasonable fact-finder could have concluded that the circumstances at the scene when Bryant left indicated that a police officer would soon be present. Bryant's conviction for failing to comply with the duty created in R.C. 4549.02(A)(1)(c) is therefore based on sufficient evidence.

*B. The Majority's Incorrect Interpretation of R.C. 4549.02(A)(1)*

{¶ 48} The majority concludes that Bryant complied with R.C. 4549.02(A)(1), but that conclusion is incorrect for several reasons.

**{¶ 49}** First, the majority focuses inappropriately on whether the state presented evidence that Bryant had actual knowledge that an officer would be present. It concludes:

> [T]he plain, unambiguous language of R.C. 4549.02(A)(1) does not require an operator of a motor vehicle who has been involved in an accident or collision to remain at the scene until a police officer arrives when that operator has provided the information required by R.C. 4549.02(A)(1) to the other persons involved in the accident or collision under R.C. 4549.02(A)(1)(a) and (b) *and when that operator is unaware that the police have been or will be summoned.*

(Emphasis added.) Majority opinion at ¶ 23. By contrast, the majority avoids assessing what would be required to comply with subsection (A)(1)(c) "had the state presented evidence that Everhardt stated that she was going to call the police or that Bryant possessed actual knowledge that she had called or was going to call the police." *Id.* at ¶ 21. Ultimately, for the majority, "[i]t is enough that Bryant remained at the scene for a reasonable amount of time, that he complied with R.C. 4549.02(A)(1)(a) and (b), and that there is no evidence that Bryant knew, when he left, that Everhardt had called or was going to call the police." *Id.* at ¶ 21.

**{¶ 50}** The problem with this approach is that the statute does not require the state to prove that a driver leaving the scene has actual knowledge that the police would arrive. As explained above, even when a driver leaves the scene without such actual knowledge, the totality of the circumstances could still indicate that the driver failed to comply with subsection (A)(1)(c). The majority's narrow focus on whether Bryant had actual knowledge that Everhardt was calling the police leads it to ignore the totality of the circumstances, and the rule it states could even be viewed as adding a knowledge element to the statute.

18

{¶ 51} Second, the majority incorrectly holds that Bryant waited a reasonable amount of time before leaving the scene. In my view, there are two separate timing issues that can arise under R.C. 4549.02(A)(1). This first relates to the time period before the police have been called, when it is not clear whether the police will be notified. The second relates to the time after the police have been notified, when one is waiting for an officer to arrive at the scene. The present case involves only the first situation.

{¶ 52} The majority places weight on the fact that Bryant left after being at the scene for an hour, but in doing so it ignores the totality of the circumstances. As discussed above, Bryant spent the hour he remained at the scene trying, unsuccessfully, to convince Everhardt not to call the police, and his departure can reasonably be viewed as being caused by his belief that Everhardt was about to call the police. I would therefore not place significant weight on the fact that an hour passed before Bryant left.[1]

{¶ 53} Third, the majority reads too much into the fact that R.C. 4549.02(A)(2) provides that a driver "shall remain at the scene of the accident or collision *until a police officer arrives*" (emphasis added) but subsection (A)(1) does not.[2] The majority states that "there would be no reason" to include this language

---

1. With respect to the obligation to remain at the scene after the police have been notified, but before an officer arrives, I generally agree with the majority that one must wait a reasonable period of time for an officer to arrive. I note however, that after the parties notify the police, they can change their minds and agree to leave before an officer arrives. It would then be very easy for the parties to simply call the police a second time to report that they exchanged their information and mutually agreed to leave the scene.

2. R.C. 4549.02(A)(2) provides:

> In the event an injured person is unable to comprehend and record the information required to be given under division (A)(1) of this section, the other operator involved in the accident or collision shall notify the nearest police authority concerning the location of the accident or collision, and the operator's name, address, and the registered number of the motor vehicle the operator was operating. The operator shall remain at the scene of the accident or collision until

in subsection (A)(2) if subsection (A)(1) required the driver to wait for police "in all circumstances." Majority opinion at ¶ 18. But there is no reason why this is necessarily the case. Subsection (A)(2) simply addresses a different situation than subsection (A)(1); subsection (A)(2) applies when an injured person is unable to comprehend or record the driver's information. Because the injured person cannot receive the driver's information, the statute requires the driver to notify the police of the location of the accident and the driver's contact information. Only *after* that does it provide that the driver must remain at the scene "until a police officer arrives." Given that, the omission of similar language in subsection (A)(1) is not particularly meaningful. Subsection (A)(1) simply has no application when an injured person is unable to comprehend the driver's information, and, unlike subsection (A)(2), it does not require that anything be done after contact information is provided to the individuals identified subsections (a), (b), and (c).

{¶ 54} That brings us to the final, and most significant, problem with the majority's interpretation of R.C. 4549.02(A)(1). By creating a bright-line rule describing when a defendant may lawfully leave the scene without waiting for the police, the majority increases the risk of harm to the public due to a driver fleeing the scene after an accident. If providing contact information to the individuals listed in subsections (A)(1)(a) and (b) and remaining "unaware that the police have been or will be summoned," majority opinion at ¶ 23, is all that is required before leaving the scene of an accident, drivers hoping to avoid the police—because they were driving while intoxicated or are in possession of illegal goods—will be encouraged to employ tactics designed to distract and delay. If those tactics are successful, the driver will avoid liability under R.C. 4549.02(A)(1)(c), potentially avoid liability for any other crimes that may be discovered by the police, and expose the public to a driver who may be intoxicated or engaged in other illegal activities.

---

a police officer arrives, unless removed from the scene by an emergency vehicle operated by a political subdivision or an ambulance.

The majority's interpretation therefore subverts the clear intent of the statute, as reflected by the text, and increases the risk of harm to the public.

{¶ 55} The majority sidesteps these concerns by suggesting that the General Assembly's intent to protect against drivers who flee the scene of an accident is reflected only in the legislative history of the statute, not the text itself. The majority also suggests that concerns over the result it reaches are policy concerns that "are properly addressed to the General Assembly, not to the courts." Majority opinion at ¶ 22. Neither of these is correct. Putting aside the question of whether legislative history may be considered, the text of R.C. 4549.02(A)(1) itself provides a clear basis for concluding that the intent of the statute is to protect against the harm that results from a driver fleeing the scene of an accident. No other reasonable conclusion could be drawn from the text. And the fact that the statute was amended in 2016 to *increase* the duty of the driver—requiring the driver to provide his or her contact information to *all* the individuals listed in subsections (a), (b), and (c), not just one—indicates that the General Assembly intended to provide *greater* protection to prevent a driver from fleeing the scene. As a result, the state's arguments should not be dismissed as mere policy concerns that carry weight only when communicated to the General Assembly. The dispute here is focused on the meaning of the statute, and this court should address arguments concerning the statute's intent to reduce the harm that results from a driver fleeing the scene of an accident.

{¶ 56} Ultimately, the better interpretation is, as I describe above, to look to the totality of the circumstances and allow the fact-finder to decide whether the driver complied with R.C. 4549.02(A)(1)(c). Doing so here leads to the conclusion that Bryant failed to comply with the statute.

## II. Conclusion

{¶ 57} Although I agree with the majority's holding that the "registered number" of a vehicle is the license-plate number associated with the vehicle, I

disagree with its interpretation of R.C. 4549.02(A)(1), and I would affirm Bryant's conviction. I therefore respectfully dissent.

_____

Paula Boggs Muething, Cincinnati City Solicitor, Natalia S. Harris, City Prosecutor, and Jonathon Vogt, Assistant City Prosecutor, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and Krista M. Gieske, Assistant Public Defender, for appellant.

_____