[Cite as *State v. Thompson*, 2026-Ohio-398.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2024-P-0074** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| MICHAEL THOMPSON, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 01234 |

## OPINION AND JUDGMENT ENTRY

Decided: February 9, 2026
Judgment: Affirmed in part, reversed in part, and remanded

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Eric R. Fink*, 11 River Street, Kent, OH 44240 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Michael Thompson ("Thompson"), appeals from the judgment of the Portage County Court of Common Pleas sentencing Thompson to an aggregate prison term of four to six years as a result of his convictions. Thompson additionally appeals from the trial court's denial of his motion to suppress evidence seized after a K-9 sniff and search of the vehicle.

{¶2} Upon review, regarding Thompson's first assignment of error, we conclude that the trial court did not err when it denied Thompson's motion to suppress. The officer lawfully conducted a traffic stop after observing a traffic violation. Thompson consented to a search of the vehicle he was operating. A free air sniff of the vehicle was conducted.

K-9 Officer IX alerted to the passenger side of the vehicle indicating the presence of narcotics. Consent to search was obtained and the K-9 "free air sniff" was conducted prior to the completion of the traffic citation as officers were waiting to receive additional information from dispatch. The traffic stop was not unlawfully prolonged and the denial of Thompson's motion to suppress was proper.

{¶3} With respect to Thompson's second assignment of error challenging the sufficiency of the evidence, Thompson was convicted of aggravated trafficking in methamphetamine; a third-degree felony, in violation of R.C. 2925.03; aggravated possession of methamphetamine, a third-degree felony, in violation of R.C. 2925.11; trafficking in cocaine, a fifth-degree felony, in violation of R.C. 2925.03; possession of cocaine, a fifth-degree felony, in violation of R.C. 2925.11; possession of heroin, a fifth-degree felony, in violation of R.C. 2925.11; possession of a fentanyl related compound, a fifth-degree felony in violation of R.C. 2925.11; trafficking in a fentanyl related compound, a fifth-degree felony, in violation of R.C. 2925.03; receipt of proceeds derived from the commission used to transport a controlled substance, a fifth-degree felony, in violation of R.C. 2927.21; and designing or operating a vehicle with a hidden compartment, a second-degree felony, in violation of R.C. 2923.241.

{¶4} After viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the possession and trafficking offenses proven beyond a reasonable doubt. Additionally, any rational trier of fact could have found the essential elements of the offense, receipt of proceeds derived from the commission of the offense used to transport a controlled substance, proven beyond a reasonable doubt.

Case No. 2024-P-0074

{¶5}    However, after viewing the evidence in a light most favorable to the State, any rational trier of fact could not have found the essential elements of designing or operating a vehicle with a hidden compartment used to transport a controlled substance. Thompson utilized an existing compartment in the vehicle. While the compartment was not manufactured for storing items, this existing compartment does not meet the definition of a hidden compartment pursuant to R.C. 2923.241. There is no evidence that Thompson altered, added, or modified the existing compartment to conceal the drugs. As such, Thompson's conviction of designing or operating a vehicle with a hidden compartment used to transport a controlled substance was not supported by sufficient evidence and is vacated.

{¶6}    The judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

**Substantive and Procedural History**

{¶7}    On November 9, 2023, the Portage County Grand Jury indicted Thompson on ten counts: aggravated trafficking in drugs, a third-degree felony, in violation of R.C. 2925.03 ("Count 1"); aggravated possession of drugs, a third-degree felony, in violation of R.C. 2925.11 ("Count 2"); trafficking in cocaine, a fifth-degree felony, in violation of R.C. 2925.03 ("Count 3"); possession of cocaine, a fifth-degree felony, in violation of R.C. 2925.11 ("Count 4"); trafficking in heroin, a fourth-degree felony, in violation of R.C. 2925.03 ("Count 5"); possession of heroin, a fourth-degree felony, in violation of R.C. 2925.11 ("Count 6"); possession of a fentanyl related compound, a fourth-degree felony, in violation of R.C. 2925.11 ("Count 7"); trafficking in fentanyl related compound, a fourth-degree felony, in violation of R.C. 2925.03 ("Count 8"); receipt of proceeds derived from

the commission of an offense subject to forfeiture proceedings, a fifth-degree felony, in violation of R.C. 2927.21 ("Count 9"); and, designing or operating a vehicle with a hidden compartment used to transport a controlled substance, a second-degree felony, in violation of R.C. 2923.241 ("Count 10"). Counts 1 through 9 had accompanying forfeiture specifications. On January 2, 2024, Thompson pleaded not guilty to the charges at arraignment.

{¶8}   A motion to suppress evidence was filed on February 23, 2024. In the motion, defense counsel argued that the officer: 1) did not have reasonable suspicion to necessitate a traffic stop; 2) unjustifiably expanded the traffic stop without reasonable suspicion; 3) did not have reasonable suspicion or probable cause to search Thompson or his vehicle; and 4) did not have probable cause to make a warrantless arrest of Thompson. In Thompson's memorandum in support of his motion to suppress, Thompson focused on the alleged delay due to the K-9 free air sniff. A hearing on the motion was held on March 7, 2024. On March 8, 2024, the trial court denied Thompson's motion to suppress.

{¶9}   On March 15, 2024, Thompson filed a motion to dismiss and a motion invoking his right to self-representation. The trial court granted Thompson's motion to represent himself on April 1, 2024. At Thompson's request, new counsel was appointed to represent him on June 4, 2024. The following day, on June 5, 2024, Thompson's bond was amended and modified to a $20,000 personal recognizance bond with the condition that he complete random drug and alcohol testing.

{¶10}  Thompson waived his right to a jury trial, and the matter proceeded to a bench trial on August 8, 2024. At trial, the following evidence was presented:

{¶11} Officer Dominic Nicolino ("Officer Nicolino") of the Ravenna Police Department, a patrolman, was working the afternoon shift with his K-9 partner, IX, on August 3, 2023. Officer Nicolino observed Thomspon sitting in a motor vehicle that was not registered to him. Officer Nicolino testified that he was familiar with Thompson and the vehicle Thompson was operating. During his shift, Officer Nicolino saw Thompson and the vehicle at different locations throughout the city.

{¶12} While observing Thompson's vehicle, Officer Nicolino saw Thompson turn without utilizing the right turn signal at the intersection of Meridian and Highland Avenue in the City of Ravenna, Portage County, Ohio. Officer Nicolino initiated a traffic stop on the vehicle.

{¶13} After initiating the traffic stop, Officer Nicolino approached the vehicle Thompson was operating. Officer Nicolino requested Thompson's identification and proof of insurance. When advised of the reason for the stop, Thompson explained that the turn signal light bulb needed to be replaced. Officer Nicolino testified he ran a history check on Thompson's license and the license plate of the vehicle. Officer Nicolino also ran the identification information of the female passenger who was with Thompson. The female passenger had a temporary ID and a paper copy of her identification. Officer Nicolino testified he had some initial difficulties running the information on the passenger.

{¶14} While Officer Nicolino was running the identification information, other police officers, including Officer Brock Wise ("Officer Wise"), arrived on scene. Officer Wise was also equipped with a body worn camera. Officer Nicolino requested that another officer confirm the identity of the female passenger. Officer Nicolino then reapproached the vehicle to ask Thompson for consent to search. Thompson consented to a search of

Case No. 2024-P-0074

the vehicle, but did not consent to officers searching his person. Officer Nicolino advised Thompson he would deploy the K-9 to conduct a free air sniff around the vehicle. K-9 IX alerted to the passenger side of the vehicle, indicating the presence of the odor of narcotics.

{¶15} After K-9 IX gave a positive alert to the vehicle, Thompson and his passenger were asked to exit the vehicle. Officer Wise conducted a pat down search of Thompson for weapons. Officer Wise testified that items could be felt in Thompson's pockets during the pat down search and that those items did not feel like guns, knives, or explosives. Both Thompson and the female passenger were placed into police cruisers. Officer Nicolino then began to search the vehicle.

{¶16} During the search of the passenger compartment of the vehicle, Officer Nicolino observed the carpet on the driver's side of the vehicle had been disturbed and was outside of the factory seal near the center gear shift area. When the carpet was pulled back, Officer Nicolino and Officer Wise saw "a clear plastic baggy with crystal-like substance inside" the area. Officers removed the plastic baggy which contained different substances individually wrapped in clear plastic. One was inside a paper fold. Officer Nicolino testified that the substances appeared to be methamphetamine and cocaine. There was also another darker powder in the baggy that Officer Nicolino could not identify. State's Exhibit 3 (A, B, C).

{¶17} After discovering the suspected narcotics in the vehicle, Officer Nicolino read Thompson his Miranda rights and searched Thompson. Officer Nicolino found an additional baggy with a paper fold of narcotics, State's Exhibit 3D, and over $2,000 in cash in the pockets of Thompson's pants. Officers Nicolino and Wise testified that the

Case No. 2024-P-0074

incident was consistent with trafficking narcotics due to the location of the drugs in the vehicle, the drugs on Thompson's person, the separate packing of the drugs, and the amount of cash in Thompson's pockets. Thompson was not arrested at the time of the incident and was released with the vehicle.

{¶18} Officer Nicolino's cruiser was equipped with a G-Tech dash camera. Officer Nicolino was also equipped with a body worn camera. Both cameras captured the interaction with Thompson and the recordings of the stop were submitted as State's Exhibit 1.

{¶19} The baggies of suspected narcotics collected from the vehicle and from Thompson's pockets were transported to the Bureau of Criminal Investigation ("BCI") for testing by Ravenna Police Department's assistant evidence technician, Detective Kevin Nicolino.[1] Martin Lewis ("Lewis"), a forensic scientist at BCI, analyzed the evidence submitted by the Ravenna Police Department. Lewis testified that he weighed each substance and used gas chromatography-mass spectrometry ("GCMS") to analyze the substances. The substance contained in State's Exhibit 3A was identified as 14.94 grams, plus or minus .5 grams, of methamphetamine. Two baggies containing an off-white material, in State's Exhibit 3B, were identified as 4.56 grams, plus or minus .5 grams, of cocaine. State's Exhibit 3C contained a gray powder material in a paper fold which was identified as .50 grams of a mixture of xylazine, heroin, and fentanyl. Similarly, State's Exhibit 3D also contained a gray powder material in a paper fold and was identified as .50 grams of a mixture of xylazine, heroin, and fentanyl.

---

1. Detective Nicolino is the father of Officer Nicolino.

{¶20}  At the close of the State's case-in-chief during trial, Thompson's counsel moved for acquittal pursuant to Crim.R. 29. Defense counsel argued that the State did not prove each and every element, specifically the "knowingly" elements of the crimes. Counsel also asserted there were chain of custody concerns and that the officers could not affirmatively testify which officer removed the drugs from the vehicle. The trial court overruled the motion without any comment from the assistant prosecutor. The defense then rested and renewed the Crim.R. 29 motion with no additional arguments. The trial court again overruled the motion.

{¶21}  On August 12, 2024, the trial court found Thompson guilty of: Count 1, aggravated trafficking in methamphetamine; Count 2, aggravated possession of methamphetamine; Count 3, trafficking in cocaine; Count 4, possession of cocaine; Count 6, possession of heroin as a fifth-degree felony; Count 7, possession of a fentanyl related compound as a fifth-degree felony; Count 8, trafficking in a fentanyl related compound as a fifth-degree felony; Count 9, receipt of proceeds derived from the commission of an offense subject to forfeiture proceedings in the amount of $2,070, a fifth-degree felony; and, Count 10, designing or operating a vehicle with a hidden compartment used to transport a controlled substance. The trial court also determined that the amount of methamphetamine exceeded the bulk amount but did not exceed five times the bulk amount. The trial court found Thompson not guilty on Count 5. The trial court also found Thompson guilty of the accompanying forfeiture specifications. Bond was revoked and a presentence investigation ("PSI") was ordered.

{¶22}  Sentencing was held on October 7, 2024. The trial court sentenced Thompson to 36 months on Count 1; 36 months on Count 2; 12 months on Count 3; 12

months on Count 4; 18 months on Count 6; 18 months on Count 7; 18 months on Count 8; 12 months on Count 9; and, four to six years on Count 10. The trial court made the consecutive sentencing findings and ordered the sentences on Counts 1 and 2 to be served concurrently to each other but consecutively to the sentence imposed on Count 3. The remaining sentences were ordered to be served concurrently for an aggregate prison term of four to six years. The trial court also ordered the forfeiture of the seized cash to the Ravenna Police Department.

{¶23} Thompson timely appeals and presents two assignments of error for review:

> "[1.] The trial court erred in denying Mr. Thompson's Motion to Suppress Evidence from the traffic stop in violation of his constitutional rights."

> "[2.] Mr. Thompson's convictions are not supported by sufficient evidence to sustain a conviction."

## Motion to Suppress

{¶24} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills*, 62 Ohio St. 3d 357. We must accept the trial court's findings of fact if they are supported by competent, credible evidence, and then independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision. *Id.* "Once an appellate court determines whether the trial court's factual findings are supported by the record, the court must then engage in a de novo review of the trial court's application of the law to those facts." *State v. Eggleston*, 2015-Ohio-958, ¶ 18 (11th Dist.), citing *State v. Lett*, 2009-Ohio-2796, ¶ 13

(11th Dist.). Accordingly, we first determine whether the lower court's factual findings are supported by the record.

{¶25} The following testimony was presented at the suppression hearing:

{¶26} On August 3, 2023, City of Ravenna Police Officer, Officer Nicolino was working the afternoon shift with his K-9 partner, IX. While on patrol, Officer Nicolino observed a smaller sedan in the downtown area of the City of Ravenna. A male, later identified as Thompson, was operating the vehicle. When Officer Nicolino first observed the vehicle operated by Thompson, a female was also seen around the vehicle.

{¶27} Later during his shift, Officer Nicolino observed the vehicle leaving the parking area of the Cimmaron Lounge. Officer Nicolino saw the vehicle a third time, heading northbound on Meridian Street. Officer Nicolino was traveling on Meridian Street, when he observed the vehicle approach the intersection of Meridian Street and Highland Avenue and turn right onto Highland Avenue without using a turn signal. Officer Nicolino initiated a traffic stop of the vehicle. A recording of the dash cam video was submitted as State's Exhibit 1.

{¶28} There were two occupants in the vehicle: Thompson and a female passenger. Officer Nicolino approached the vehicle, and informed Thompson he was stopped for failing to use a turn signal. Thompson advised that the turn signal was not functioning and that he had a bulb to replace the light. Officer Nicolino requested Thompson's license and insurance. Thompson indicated that the car belonged to his neighbor. Officer Nicolino also requested identification from the female passenger.

{¶29} Officer Nicolino returned to his cruiser and provided the information to dispatch. Officer Nicolino was familiar with Thompson and radioed for other officers to

Case No. 2024-P-0074

come to the location. Officer Nicolino testified that at this point, he had not fully concluded the traffic stop. Officer Nicolino reapproached the vehicle and inquired if there was anything illegal in the car. Thompson said there was nothing illegal inside of the vehicle and gave Officer Nicolino consent to search the vehicle. Thompson did not consent to a search of his person. Officer Nicolino retrieved his K-9 partner, IX, from his police cruiser and an exterior sniff of the vehicle was conducted. K-9 IX is trained in the odors of meth, crack cocaine, and heroin. K-9 IX alerted to the presence of the odor of narcotics by sitting at the passenger side door of the vehicle. The alert occurred approximately eight minutes after Officer Nicolino first approached the vehicle.

{¶30} Thompson and the female passenger exited the vehicle, and officers conducted a pat-down search. Meanwhile, Officer Nicolino began to search the vehicle. While searching the back seat passenger compartment, Officer Nicolino observed the front carpet of the vehicle was altered with and pulled back. After maneuvering the carpet on the driver side of the vehicle, Officer Nicolino discovered a clear baggy inside the gear shift area under the carpet. The item was retrieved from the area and the baggie was discovered to contain suspected narcotics.

{¶31} Thompson was then searched and additional drugs and money were discovered on his person. He was released from the scene so that the suspected drugs could be identified.

{¶32} On March 8, 2024, the trial court denied Thompson's motion to suppress and concluded that Officer Nicolino had probable cause to stop the vehicle Thompson was operating based upon the commission of a traffic violation. The trial court also determined that Officer Nicolino "conducted the K-9 search within nine minutes of the

stop, which is reasonable and occurred while awaiting information from LEADS." In addition, the trial court concluded that the K-9 "alert was reliable, providing the requisite probable cause to search the vehicle."

{¶33} Upon review of the record, we conclude that the trial court's factual findings are supported by the record. We must now engage in a de novo review of the trial court's application of the law to those facts. Specifically, Thompson contends that the trial court erred when it denied his motion to suppress by concluding that the traffic stop was not unreasonably prolonged to conduct the search of the vehicle.

{¶34} Officer Nicolino observed the vehicle driven by Thompson turn without signaling. "A police officer may initiate a traffic stop after witnessing a traffic violation." *State v. Smith*, 2018-Ohio-1444, ¶ 10 (3d Dist.), citing *Dayton v. Erickson*, 1996-Ohio-431. The failure to activate a turn signal in compliance with R.C. 4511.39(A) is a traffic violation that provides a law enforcement officer "with a legal justification to initiate a traffic stop." *State v. Shuff*, 2022-Ohio-3880, ¶ 8 (3d Dist.), quoting *State v. Harpel*, 2020-Ohio-4513, ¶ 20 (3d Dist.). Therefore, Officer Nicolino could lawfully stop the vehicle Thompson was operating.

{¶35} Thompson argues that Officer Nicolino prolonged the stop without reasonable articulable suspicion. Thompson relies on *Rodriguez v. United States*, 575 U.S. 348 (2015), which held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to

complete th[e] mission' of issuing a ticket for the violation." *Id*. at 350–51, quoting *Illinois v. Caballes*, 543 U.S. 405, 407.

{¶36} The Supreme Court of Ohio recognized in *State v. Batchili*, 2007-Ohio-2204:

> The facts of this case are almost directly aligned with those of the Twelfth District Court of Appeals case *State v. Howard*, Preble App. Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656, ¶ 15, which held, "[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003-03-007, 2004-Ohio-184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' *State v. Carlson* (1995), 102 Ohio App.3d 585, 598-599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521-522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605]."

> The record establishes that at the time the dog alerted, eight minutes and 56 seconds into the stop, Trooper Arnold was still waiting for the results of the criminal-background check. She further testified that it would take her approximately five to ten minutes to issue a warning, and anywhere from ten to 20 minutes to issue an actual citation.

*Batchili* at ¶ 12-13.

{¶37} The Supreme Court of Ohio has held, "[a] traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and not yet completed at the time a drug dog alerts on the vehicle. There is no showing that the detention was delayed so that the dog could conduct its search, and

Case No. 2024-P-0074

therefore, there was no constitutional violation." *Batchili* at ¶ 14; *see State v. Jones*, 2016-Ohio-7553, ¶ 20 (11th Dist.). Here, Officer Nicolino was still gathering permissible background information, including identifying the passenger and determining the ownership of the vehicle, when he approached Thompson and inquired about the contents of the vehicle.

{¶38} Further, a K-9 sniff is not a search within the meaning of the Fourth Amendment. *See State v. Young*, 2015-Ohio-398, ¶ 29 (6th Dist.). "An officer need not have reasonable suspicion that a car contains drugs before subjecting a lawfully detained vehicle to a K-9 sniff." *Id*. *See State v. Werder*, 2020-Ohio-2865, ¶ 14 (6th Dist.). The vehicle was lawfully detained for a traffic stop. Accordingly, Officer Nicolino did not need reasonable suspicion that the vehicle contained drugs before conducting the K-9 sniff. Instead, reasonable articulable suspicion is needed when an officer seeks to extend a stop beyond the time necessary to complete the mission of issuing a ticket for the violation.

{¶39} Upon review of the motion to suppress, the trial court found that Thompson was detained no longer than was required to investigate the traffic violation and issue a ticket. Specifically, the trial court determined that Officer Nicolino "conducted the K-9 search within nine minutes of the stop, which is reasonable and occurred while awaiting information from LEADS." Because the traffic stop had not concluded at the time of the request to search the vehicle, there is no showing that the detention was delayed and therefore, no Fourth Amendment violation.

{¶40} Furthermore, "a search of one's person is valid if it is a product of one's voluntary consent." *State v. Melone*, 2009-Ohio-6710, ¶ 48 (11th Dist.), citing *State v.*

*Lett*, 2009-Ohio-2796, ¶ 30 (11th Dist.). "Where a vehicle is stopped for a traffic violation, consent to search, either a vehicle or person, is valid 'if obtained within the period of time required to process the traffic violation, even if the officer suspects no other criminal activity.'" *Melone* at ¶ 25, quoting *State v. Loffer*, 2003-Ohio-4980, ¶ 22 (2d Dist.); *see Lett* at ¶ 25.

{¶41} This court reasoned in *Melone*, "[b]ecause [Officer McNeely] sought and obtained consent to search [Melone] and his passenger almost immediately after the inception of the traffic stop (and well within the timeframe of an average traffic stop), we hold the officer's request as well as appellant's consent were valid under the Fourth Amendment." *Id*. at ¶ 49. Similarly, Thompson consented to a search of the vehicle well within the time frame of an average traffic stop.

{¶42} The trial court concluded that Thompson consented to the search of the vehicle but did not consent to the search of his person. The trial court also determined that consent to search the vehicle was given prior to the K-9 search and prior to the completion of the traffic stop.

{¶43} Thompson cites to this court's decision in *State v. Neyhard*, 2022-Ohio-1098 (11th Dist.), wherein this court reversed a trial court's decision denying a defendant's motion to suppress. Specifically, the court found "that under the circumstances . . . the officer unreasonably prolonged the stop to await backup before conducting a free air sniff and did so without the reasonable suspicion necessary to do so." *Neyhard* at ¶ 14. In *Neyhard*, an officer conducted a traffic stop "a few seconds after 5:00 p.m." *Id*. at ¶ 12. Four minutes later, the officer ran Neyhard's driver's license through dispatch and requested backup, which arrived three minutes later. *Id.* This court

concluded that "[t]he video and testimony do not affirmatively demonstrate that the officer was awaiting any information from dispatch necessary to finishing the tasks reasonably related to the purpose of the stop." *Id.*

{¶44} The instant case is distinguishable from *Neyhard*. Unlike *Neyhard*, the video and testimony do affirmatively demonstrate that Officer Nicolino was awaiting information from dispatch and was actively seeking to confirm the vehicle's ownership when Officer Nicolino requested consent to search the vehicle. Moreover, there is no indication in *Neyhard* that officers asked for consent, but instead advised Neyhard that the officer's K-9 would conduct a free air sniff. *Id.* at ¶ 2.

{¶45} We conclude that there is nothing in this record to indicate that the duration of the stop was longer than necessary and the trial court properly denied Thompson's motion to suppress evidence on these grounds. Specifically, State's Exhibit 1 illustrates that Officer Nicolino had received information from dispatch regarding Thompson, but that there was difficulty confirming the identification of the passenger. Officer Nicolino also could not determine ownership of the vehicle because it did not belong to either Thompson or his female passenger. Officer Nicolino testified that the traffic stop was not completed when he asked for and received Thompson's consent to search the vehicle.

{¶46} Accordingly, the trial court's factual findings are supported by the record and the trial court properly applied the law to those facts.

{¶47} Thompson's first assignment of error is without merit.

### Crim.R. 29 Motion/Sufficiency of the Evidence

{¶48} In his second assignment of error, Thompson asserts that "the State failed to prove Mr. Thompson knowingly possessed and trafficked drugs, knowingly designed

or operated a vehicle with a hidden compartment, or that he received proceeds from the commission of an offense."

{¶49} An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991) *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89 (1997), fn. 4, paragraph two of the syllabus. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). *See State v. Ross*, 2018-Ohio-452, ¶ 34 (11th Dist.). Whether the evidence is legally sufficient to sustain a verdict is a question of law, which we review de novo. *Ross* at ¶ 34, citing *Thompkins* at 386.

**Possession and Trafficking Charges**

{¶50} Thompson avers that the State failed to present sufficient evidence to support a conviction on the possession and trafficking offenses. Among other convictions, Thompson was convicted of aggravated trafficking in methamphetamine; a third-degree felony, in violation of R.C. 2925.03; aggravated possession of methamphetamine, a third-degree felony, in violation of R.C. 2925.11; trafficking in cocaine, a fifth-degree felony, in violation of R.C. 2925.03; possession of cocaine, a fifth-degree felony, in violation of R.C. 2925.11; possession of heroin, a fifth-degree felony, in violation of R.C. 2925.11; possession of a fentanyl related compound, a fifth-degree felony in violation of R.C.

2925.11; and trafficking in a fentanyl related compound, a fifth-degree felony, in violation of R.C. 2925.03.

{¶51}   In regard to the possession convictions, enumerated as Counts 2, 4, 6, and 7, the State had to prove beyond a reasonable doubt, each element of the offenses. R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶52}   Thompson was convicted of aggravated possession of methamphetamine, a schedule II drug, in an amount which was equal to or exceeded the bulk amount, but was less than five times the bulk amount. R.C. 2925.11(C)(1)(b). Thompson was also convicted of two counts of possession of a fentanyl related compound, in an amount less than one gram. R.C. 2925.11(C)(11)(a). Thompson was convicted of possession of cocaine in an amount less than five grams. R.C. 2925.11(C)(4)(a).

{¶53}   In regard to the trafficking convictions, enumerated as Counts 1, 3, and 8, the State had to prove beyond a reasonable doubt each element of the offenses. R.C. 2925.03 (A) provides:

> No person shall knowingly do any of the following:
>
> (1)     Sell or offer to sell a controlled substance or a controlled substance analog;
>
> (2)     Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶52}   Both possession and trafficking convictions require the State to prove that Thompson acted knowingly.

Case No. 2024-P-0074

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶53} Thompson asserts that "[t]he State presented absolutely no evidence of Mr. Thompson's actual or constructive knowledge regarding the drugs found in the vehicle." "Possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01 (K); *see State v. Birdsong*, 2024-Ohio-1744, ¶ 42. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Birdsong*, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. "Even if the contraband is not in a suspect's 'immediate physical possession,' the suspect may still constructively possess the item, so long as the evidence demonstrates that he 'was able to exercise dominion and control over the controlled substance.'" *State v. Fogle*, 2009-Ohio-1005, ¶ 28 (11th Dist.), quoting *State v. Lee*, 2004-Ohio-6954, ¶ 41 (11th Dist.). Thompson was operating the vehicle which contained the narcotics; therefore, he had constructive possession of the narcotics.

{¶54} As this court explained in *Birdsong*:

"[M]ere possession of drugs is insufficient to prove trafficking," but constructive possession of drugs that have been packaged for sale along with possession of other paraphernalia associated with sale is sufficient evidence of trafficking. *State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 10, citing *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079, 2013-Ohio-1612, ¶ 46. Possession of a large quantity of drugs, large amounts of cash, plastic baggies, and scales, among other indicia of trafficking, provide persuasive circumstantial evidence that tends to prove a violation of R.C. 2925.03(A)(2). See *State v. Floyd*, 7th Dist. Mahoning No. 18 MA 0106, 2019-Ohio-4878, ¶ 32 (plastic baggies, scales with cocaine residue, a large quantity of cash, and a firearm provide circumstantial evidence of trafficking); *State v. Burton*, 8th Dist. Cuyahoga No. 107054, 2019-Ohio-2431, ¶ 48 (in addition to a large quantity of drugs, plastic bags, and digital scales, the presence of "cut mixes," which are often used to prepare drugs for sales, were located which provided sufficient, credible circumstantial evidence of trafficking); *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 39 (large quantities of drugs, $8,322.00 in cash, and various other evidence indicative of drug trafficking such as digital scales and plastic baggies established sufficient, circumstantial evidence of trafficking); *State v. Fain*, 5th Dist. Delaware No. 06CAA120094, 2007-Ohio-4854, ¶ 37-39 (Plastic sandwich bags and digital scales are circumstantial evidence for drug trafficking.); *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 50 (presence of drugs and drug paraphernalia permit a reasonable inference that a person was preparing drugs for shipment).

Furthermore, this court has pointed out that in cases involving possession of drugs in a motor vehicle that the propinquity of the defendant and the illegal substances is additionally a relevant factor. *State v. Cola*, 77 Ohio App.3d 448, 451, 602 N.E.2d 730 (11th Dist.1991).

*Birdsong* at ¶ 43-44.

{¶55} Thompson alleges in his brief that "the trial court made an inference based upon its independent review, after the close of evidence, [and] has no bearing on Mr. Thompson's Crim.R. 29 motions." This case was tried to the bench. It is well-established

Case No. 2024-P-0074

in Ohio that "'a judge in a bench trial is presumed not to have considered improper evidence in reaching a verdict,' but rather is presumed to have 'considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v. Horton*, 2024-Ohio-612, ¶ 16 (6th Dist.), quoting *State v. Arnold*, 2016-Ohio-1595, ¶ 39; *State v. Post*, 32 Ohio St.3d 380, 384 (1987).

{¶56} The Supreme Court of Ohio has noted:

> When drawing reasonable inferences from the evidence, jurors are "free to rely on their common sense and experience." *State v. Allen*, 1995-Ohio-283, ¶ 45. We have also recognized that "there can be no bright-line distinction regarding the probative force of circumstantial and direct evidence." *State v. Jenks*, 61 Ohio St.3d 259 (1991), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4. "'Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable.'" *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988), quoting *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974). The United States Supreme Court has likewise recognized that "'[c]ircumstantial evidence . . . may . . . be more certain, satisfying and persuasive than direct evidence.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, (2003), quoting *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500, 508, fn. 17 (1957).

*State v. Dunn*, 2024-Ohio-5742, ¶ 32.

{¶57} Here, the State presented as evidence the drugs found in the vehicle operated by Thompson and the drugs found on Thompson's person. The State specifically presented evidence that one baggie found in the vehicle contained a paper fold. A similar baggy of drugs and a paper fold were found on Thompson. The trial court, when reviewing the evidence as a jury would, noted the similarities of the paper used as the paper fold. Both paper folds were from the same electric bill. This circumstantial

evidence was sufficient to prove beyond a reasonable doubt that Thompson was aware of the location of the drugs inside the vehicle. Furthermore, Thompson was in possession of several different types of drugs, individually packaged, and had over $2,070 on his person.

{¶58}  Therefore, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of possession and trafficking proven beyond a reasonable doubt.

### Receipt of Proceeds

{¶59}  Thompson also claims that the State did not present sufficient evidence that he was in receipt of proceeds from the commission of an offense subject to forfeiture pursuant to R.C. 2927.21. R.C. 2927.21 (B) provides: "[n]o person shall receive, retain, possess, or dispose of proceeds knowing or having reasonable cause to believe that the proceeds were derived from the commission of an offense subject to forfeiture proceedings." "In cases involving unlawful goods, services, or activities, 'proceeds' means any property derived directly or indirectly from an offense. 'Proceeds' may include, but is not limited to, money or any other means of exchange. 'Proceeds' is not limited to the net gain or profit realized from the offense." R.C. 2981.01 (11)(a). Thompson was discovered to have both suspected narcotics and a large sum of money, or proceeds, on his person.

{¶60}  After the discovery of the drugs in the vehicle, officers recovered $2,070 from Thompson's pockets.  As there was sufficient evidence to convict Thompson of possessing and trafficking drugs, and after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the receipt

Case No. 2024-P-0074

of proceeds from the commission of an offense subject to forfeiture pursuant to R.C. 2927.21.

### Hidden Compartment

{¶61} Lastly, Thompson argues that the State failed to present sufficient evidence to support his conviction of designing or operating a vehicle with a hidden compartment used to transport a controlled substance, a second-degree felony, in violation of R.C. 2923.241(C).Thompson contends that there was no evidence of alteration to the vehicle with either the addition or subtraction of a part. The State, on the other hand, asserts that Thompson "modified the original factory equipment by pulling the carpet out of the gear shift area to create a place to conceal, hide or prevent discovery of the drugs." Thus, whether Thompson's conviction under R.C. 2923.241(C) is supported by sufficient evidence is dependent upon the definition of a hidden compartment and the term "modified." Thus, Thompson raises the issue of statutory interpretation.

{¶62} We review questions of law, including statutory interpretation, de novo. *State v. Jordan*, 2023-Ohio-3800, ¶ 19, citing *State v. Straley*, 2014-Ohio-2139, ¶ 9. The court has a duty "to enforce the statute as written, making neither additions to the statute nor subtractions therefrom" where the language of a statute is clear and unambiguous. *Id*., quoting *Hubbard v. Canton City School Bd. of Edn*., 2002-Ohio-6718, ¶ 14. However, when the language of a statute is ambiguous, "'we must then interpret the statute to determine the General Assembly's intent.'" *Id*., quoting *State v. Hairston*, 2004-Ohio-969, ¶ 13. Accordingly, we turn to R.C. 2923.241(C).

{¶63} R.C. 2923.241(C) provides that "no person shall knowingly operate, possess, or use a vehicle with a hidden compartment with knowledge that the hidden

compartment is used or intended to be used to facilitate the unlawful concealment or transportation of a controlled substance."

{¶64} Hidden compartment is further defined in R.C. 2923.241(A)(2).

> "Hidden compartment" means a container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure. "Hidden compartment" includes, but is not limited to, any of the following:
>
> (a) False, altered, or modified fuel tanks;
>
> (b) Any original factory equipment on a vehicle that has been modified to conceal, hide, or prevent the discovery of the modified equipment's contents;
>
> (c) Any compartment, space, box, or other closed container that is added or attached to existing compartments, spaces, boxes, or closed containers integrated or attached to a vehicle.

R.C. 2923.241(A)(2).

{¶65} Thompson asserts that the State failed to prove beyond a reasonable doubt that he was operating a vehicle with a hidden compartment. Thompson relies upon *State v. Double*, 2021-Ohio-632 (9th Dist.), in support of his assertion that the State failed to present sufficient evidence to support this conviction.

{¶66} In *Double*, the appellant argued that his vehicle did not contain a hidden compartment for purposes of Section 2923.241(A)(2), as his vehicle contained original factory equipment that had not been modified or altered in any way. The Ninth District Court of Appeals agreed. *Id.* at ¶ 12. Specifically, during the traffic stop in *Double*, Trooper Castillo smelled a strong odor of raw marijuana and subsequently searched Double's vehicle. *Id.* at ¶ 2. Trooper Castillo was familiar with the make and model of the vehicle as the officer previously owned a Chevy Cavalier. *Id.* at ¶ 3. The strong odor was coming

from the center console, so Trooper Castillo used a pocketknife to open the compartment of the center console which "contained 'the wires to the gear shift and whatnot[.]'" *Id.* A packet of tissue paper that contained a wax form of hashish, and a small container with more hashish was discovered inside the compartment. *Id.* at ¶ 4. Trooper Castillo further testified that the "compartment was neither created nor installed by" the defendant. *Id.* at ¶ 3.

{¶67} The appellate court concluded, after examining the statute and applying it to the facts of the case, that the State failed to present sufficient evidence to support Double's conviction and held: "[h]aving examined the statute in its entirety and applied it to the facts of this case, we conclude that the State failed to present sufficient evidence indicating that Mr. Double's vehicle, which contained original factory equipment with no modifications or additions, contained a '[h]idden compartment' for purposes of Section 2923.241(A)(2)." *Id.* at ¶ 18. The Ninth District Court of Appeals found that "Mr. Double did not modify or alter his vehicle in order to conceal drugs. Nor did he add or attach anything to his vehicle. He simply found what he presumably believed to be a good hiding place. That cannot be what Section 2923.241 seeks to criminalize." *Id.* at ¶ 17. The appellate court reasoned that the plain language of R.C. 2923.241 requires more, or any enclosed area in a vehicle could be considered a hidden compartment simply because it is used to hide drugs. *Id.* at ¶ 18.

{¶68} In contrast, the State asserts that Thompson's case is more akin to *State v. Gomez*, 2019-Ohio-481 (5th Dist.). In *Gomez*, the State and defense counsel stipulated to the facts, that included that an altered tire, which was not the spare tire, had "a purposeful cut" in the outside of the tire "giving access to its interior." Methamphetamine

Case No. 2024-P-0074

residue was found inside those purposeful cuts in the tire. *Id.* at ¶ 16. The trial court subsequently found Gomez guilty of the fabrication of a vehicle with a hidden compartment. *Id.* The facts presented in *Gomez* are factually distinguishable from Thompson's case. Gomez modified a spare tire with purposeful cuts to create spaces, that otherwise did not exist, to conceal the drugs.

{¶69} "'A court's objective when construing a statute is to give effect to the legislature's intent. We seek legislative intent first in the statutory language. If the statutory language is clear and unambiguous, we apply it as written, giving effect to its plain meaning.' (Citations omitted.)" *State v. Smith*, 2025-Ohio-2736, ¶ 20 (11th Dist.), quoting *State v. Bryant*, 2020-Ohio-1041, ¶ 12. "In addition, '[w]e read words in a statute in the context of the whole statute. "Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative."' (Citation omitted.) [*Bryant*] at ¶ 17, quoting *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 2017-Ohio-8348, ¶ 14." *Smith* at ¶ 20.

{¶70} The dissent's analysis rests on a fundamental misreading of the statute's structure. While the dissent correctly notes that a "hidden compartment" "includes, but is not limited to" the three enumerated examples, it fails to recognize what unites those examples: each involves human alteration of a vehicle's original design. The statute lists: (a) false, altered, or modified fuel tanks; (b) modified factory equipment; and (c) added or attached compartments. R.C. 2923.241(A)(2). The common thread is deliberate transformation of the vehicle to create concealment capabilities beyond its manufactured state.

Case No. 2024-P-0074

{¶71} Further, the dissent misapprehends the function of "includes, but is not limited to" in this statutory context. This phrase modifies the *types* of modifications that can create hidden compartments, not the universe of all concealed spaces. When a statute says a term "includes, but is not limited to" specific examples, it expands the category of things *like* those examples, not the category of all things imaginable. If the legislature intended any concealed space to qualify, it would have simply stopped after defining hidden compartment as "a container, space, or enclosure that conceals." The additional language limiting examples to modifications would be superfluous.

{¶72} R.C. 1.42 provides "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." "'In determining the plain and ordinary meaning of a word, courts may look to dictionary definitions of the word as well as the "meaning that the word[ ] ha[s] acquired when ... used in case law."'" (Bracketed Text in Original.) *State ex rel. AutoZone Stores, Inc. v. Indus. Comm*., 2024-Ohio-5519, quoting *State v. Bertram*, 2023-Ohio-1456, ¶ 13, quoting *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798 ¶ 21.

{¶73} "Modify" is defined as "to make less extreme; to limit or restrict the meaning of especially in a grammatical construction; to change (a vowel) by umlaut; to make minor changes in, to make basic or fundamental changes in often to give a new orientation to or to serve a new end." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/modify (accessed December 10, 2025) [https://perma.cc/64VM-KAZU]. Black's Law Dictionary similarly defines "modify" as "[t]o make somewhat

different; to make small changes to (something) by way of improvement, suitability, or effectiveness; [t]o make more moderate or less sweeping; to reduce in degree or extent; to limit, qualify, or moderate. *Black's Law Dictionary* (12th ed. 2024). Likewise, "modification" is defined as "[a] change to something; an alteration or amendment; [a] qualification or limitation of something." *Id*. The interpretive principle of noscitur a sociis— that words grouped in a list should be given related meanings—counsels against reading "hidden compartment" to include any concealed space whatsoever. The statute's string of operative verbs should be reasonably read to have a similar connotation. That is to say that the provided definitions of a hidden compartment in the statute are narrowed by the commonsense canon of noscitur a sociis—which counsels that a word is given more precise content by the neighboring words with which it is associated. *See Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961); 2A N. Singer & J. Singer, *Sutherland Statutes and Statutory Construction* § 47:16 (7th Ed.2007); *see also United States v. Williams*, 553 U.S. 285, 294-95 (2008).

{¶74} When the legislature provides specific examples following a general term, those examples illuminate the general term's intended scope. All three examples provided in the statute involve affirmative acts of vehicle modification. This pattern cannot be ignored.

{¶75} The dissent seeks to avoid this conclusion by distinguishing between spaces "designed to provide access" versus those that "prevent discovery." But this distinction appears nowhere in the statutory text and would require courts to engage in metaphysical inquiries about the "nature" or "design purpose" of every concealed space in a vehicle. Under the dissent's test, these determinations would turn on judicial

speculation rather than objective statutory criteria. The issue is not the effectiveness of concealment but whether the vehicle has been modified to create that concealment.

{¶76} Contrary to the dissent's assertion, our interpretation gives full effect to the common statutory phrase: "includes, but is not limited to." This language ensures that the three enumerated examples are illustrative, not exhaustive. Other forms of vehicle modification beyond false fuel tanks, modified factory equipment, or added compartments could qualify, e.g., false floors, hollowed-out seats, or modified body panels. The phrase expands the ways vehicles can be modified to create hidden compartments, not the definition of hidden compartment itself to include unmodified spaces.

{¶77} Moreover, the legislative purpose is clear from the penalty structure. The General Assembly created a separate, more serious offense—elevating it to a second-degree felony—for those who go beyond simple drug possession to actively configure vehicles for drug concealment. This represents a qualitative difference in culpability: the difference between opportunistically using an existing space and deliberately creating or modifying a space for criminal purposes.

{¶78} The structure of the statute itself provides additional support for this interpretation. Subsection (D) prohibits any person previously convicted of aggravated drug trafficking (a first or second-degree felony) from operating, possessing, or using a vehicle with a hidden compartment without any requirement that drugs actually be concealed. If we accept the dissent's expansive reading that any concealed space constitutes a "hidden compartment," then subsection (D) would criminalize a previously convicted trafficker's mere operation of virtually any standard vehicle, as all vehicles

Case No. 2024-P-0074

contain spaces that could theoretically conceal contraband. This cannot be what the legislature intended.

{¶79}  A statute must be construed to give effect to all its provisions. The existence of subsection (D)—creating strict liability for certain offenders—makes sense only if "hidden compartment" has a limited meaning tied to modifications or alterations.

{¶80}  Finally, the rule of lenity requires that we construe ambiguous criminal statutes in favor of defendants. "When a statute defines a criminal offense, we construe the statute strictly against the state and liberally in favor of the accused." *State v. Bryant,* 2020-Ohio-1041, ¶ 12. R.C. 2901.04(A)—Ohio's statutory rule of lenity—also states that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." As we have explained, the function of this rule is to prevent a court from "interpret[ing] a criminal statute so as to increase the penalty it imposes on a defendant if the intended scope of the statute is ambiguous." *State v. Elmore*, 2009-Ohio-3478, ¶ 38. *See United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion); *see also State v. Pendergrass*, 2020-Ohio-3335, ¶ 25 (because no sound textual argument resolves the facial ambiguity in the statute in favor of the state's interpretation, at the very least, Pendergrass prevails under the rule of lenity). Even if both interpretations were equally plausible—and they are not—we would be obligated to adopt the narrower construction that provides clear notice of what conduct is prohibited.

{¶81}  The dissent's claim that the statute is unambiguous is belied by the very existence of conflicting interpretations among Ohio appellate courts. When reasonable jurists disagree about statutory meaning—as evidenced by this very dissent and the split

between *Double* and the dissent's interpretation—ambiguity exists. The rule of lenity requires us to adopt the interpretation that provides clear notice of prohibited conduct. A defendant cannot reasonably be expected to know that using an unmodified factory space violates a statute targeting "hidden compartments" when the only specific examples involve modifications.

{¶82} Remarkably, the dissent invokes judicial restraint while simultaneously advocating for the broadest possible reading of a criminal statute. True judicial restraint requires us to ensure that criminal statutes provide fair notice of prohibited conduct and do not sweep more broadly than their text and structure support. We need not wait for prosecutorial overreach in other cases to recognize that the dissent's interpretation lacks limiting principles.

{¶83} The record here shows Thompson used an existing space behind factory panels without any modification, alteration, or addition to the vehicle. While the location may have been convenient for concealment, convenience or concealment alone cannot transform an unmodified factory space into a "hidden compartment" under R.C. 2923.241. To hold otherwise would criminalize the use of any existing concealed space in a vehicle, a result the statutory text and structure do not support.

{¶84} Accordingly, after viewing the evidence in a light most favorable to the State, we conclude that no rational trier of fact could have found the essential elements of designing or operating a vehicle with a hidden compartment used to transport a controlled substance in accordance with R.C. 2923.241 proven beyond a reasonable doubt. Therefore, we find Thompson's second assignment of error to be meritorious as to this

conviction. Thompson's conviction shall be vacated, and this matter is remanded for resentencing.

## Conclusion

{¶85}  The judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part. Thompson's conviction of designing or operating a vehicle with a hidden compartment used to transport a controlled substance, a second-degree felony, in violation of R.C. 2923.241(C), is hereby vacated. All other convictions were supported by sufficient evidence. This matter is remanded for proceedings consistent with this opinion.

EUGENE A. LUCCI, J., concurs

SCOTT LYNCH, J., concurs in part and dissents in part with a Dissenting Opinion.

_____

SCOTT LYNCH, J., concurs in part and dissents in part with a Dissenting Opinion.

{¶86}  I concur with the majority opinion with respect to all the arguments raised in this appeal with the sole exception of whether the conviction for violating R.C. 2923.241, the designing or operating a vehicle with a hidden compartment used to transport a controlled substance statute is supported by sufficient evidence.  Considering the record before this court, there was sufficient evidence to prove, beyond a reasonable doubt, that Thompson knowingly operated a vehicle with a hidden compartment, i.e., the space behind the panels of the center console, used to facilitate the unlawful concealment of a controlled substance.  R.C. 2923.241(C).  Accordingly, the hidden compartment conviction should be affirmed.

Case No. 2024-P-0074

{¶87} The majority opinion interprets the statute in such a way that, unless the space in question has been modified, altered, added or attached to a vehicle, it is insufficient to sustain a conviction. The statute "includes" specific examples of hidden compartments in which the space has been modified or altered while specifying that a hidden compartment "is not limited to" these types of compartments. R.C. 2923.241(A)(2). Applying the principles of *noscitur a sociis*, the majority concludes that because the examples share a "common thread," *i.e.*, the "deliberate transformation of the vehicle to create concealment capabilities beyond its manufactured state," a space cannot constitute a hidden compartment unless it has been altered or modified. This interpretation is contrary to the plain and ordinary meaning of the statute which is that a hidden compartment includes the deliberate transformation of a vehicle to create concealment capabilities, but "***is not limited to***" such compartments. If such were the legislature's intention, then the necessity of modification or alteration would have been included in the definition of a hidden compartment rather than relegated to a non-exhaustive list of examples. Rather, modification of a factory component is not a *sine qua non* for violating the operating a vehicle with a hidden compartment statute.

{¶88} With regard to the second assignment of error, I respectfully dissent.

***The space under the center console constitutes a "hidden compartment"***

{¶89} "No person shall knowingly operate, possess, or use a vehicle with a hidden compartment with knowledge that the hidden compartment is used or intended to be used to facilitate the unlawful concealment or transportation of a controlled substance." R.C. 2923.241(C). The statute defines a "hidden compartment" as "a container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of

Case No. 2024-P-0074

the container, space, or enclosure." R.C. 2923.241(A)(2). In the present case, Thompson was operating a vehicle with a variety of controlled substances concealed in the space under the center console enclosed by paneling. To access the space, the carpeting on the floor of the vehicle had to be pulled back and paneling pushed aside. The narcotics were not otherwise visible or accessible. One of the officers searching the vehicle testified that he became suspicious something might be concealed when he noticed the carpeting pulled away from the paneling. Because this space concealed, hid, and otherwise prevented the discovery of the narcotics behind the paneling, it constituted a "hidden compartment." Construing this evidence in the State's favor, there was credible evidence that Thompson knowingly operated the vehicle with knowledge that this space was being used to facilitate the unlawful concealment or transportation of controlled substances, and Thompson's conviction was supported by sufficient evidence.

{¶90} The majority does not dispute that the space at issue in the present case concealed, hid, or otherwise prevented the discovery of controlled substances. Rather, the majority interprets the statute to mean that, unless Thompson has modified or altered the paneling, it does not constitute a hidden compartment: "There is no evidence that Thompson altered, added, or modified the existing compartment to conceal the drugs." *Supra* at ¶ 5. Such an interpretation of the statute is contrary to the plain and ordinary meaning of the statute.

### *The statute expressly states that a hidden compartment "is not limited to" altered or modified spaces*

{¶91} The designing or operating a vehicle with a hidden compartment statute provides that a "[h]idden compartment' includes, ***but is not limited to*** … [f]alse, altered, or modified fuel tanks," "[a]ny original factory equipment on a vehicle that has been

Case No. 2024-P-0074

modified," and "[a]ny compartment, space, box, or other closed container that is added or attached." (Emphasis added.) R.C. 2923.241(A)(2)(a), (b), and (c). Although the statute states that hidden compartments are "not limited to" original factory equipment that has been modified, the majority concludes just the opposite. The conviction is being reversed because "Thompson used an existing space behind factory panels without any modification, alteration, or addition to the vehicle." *Supra* at ¶ 83.

{¶92} The majority summarizes the statute as providing that hidden compartments include, but are not limited to, three enumerated examples. It then observes each of these enumerated examples "involves human alteration of a vehicle's original design." *Supra* at ¶ 70. The point is then re-emphasized: "The common thread is deliberate transformation of the vehicle to create concealment capabilities beyond its manufactured state." The interpretative principle of *noscitur a sociis* is invoked (despite the fact that there is no real uncertainty that the three enumerated examples do involve some sort of modification or alteration of the vehicle). *Supra* at ¶ 73. Finally, it is concluded: "When the legislature provides specific examples following a general term, those examples illuminate the general term's intended scope." *Supra* at ¶ 74.

{¶93} The majority's conclusion would be perfectly reasonable if the legislature had not expressly stated that the scope of the general term "is not limited to" the specific examples. In fact, because the specific examples all entail some sort of modification or alteration, the qualifying "is not limited to" gains greater force, *i.e.*, a hidden compartment does not need to be modified or altered. It is as though the legislature, realizing that the statutory definition of a hidden compartment does not require modification or alteration, wanted to make clear that a hidden compartment could include modification or alteration

Case No. 2024-P-0074

to the vehicle by providing some non-exhaustive examples. The majority's conclusion can only stand if the "is not limited to" language is nullified. But there are no legitimate grounds for doing so.[2]

### Legislative intent is expressed by the language of the statute

{¶94} "In determining the General Assembly's intent, the starting point in the construction of a legislative enactment is the text of the statute itself." *Smith v. Friendship Village of Dublin, Ohio, Inc.*, 2001-Ohio-1272, ¶ 13. The principle was laid down by Chief Justice John Marshall of the United States Supreme Court: "The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction." *United States v. Wiltberger*, 18 U.S. 76, 95-96 (1820).

### Thompson's reliance on State v. Double, 2021-Ohio-632 (9th Dist.)

{¶95} The majority cites the Ninth District's decision in *Double* in support of its conclusion that the plain meaning of the statute itself restricts its application to modified spaces. *Compare Double* at ¶ 17 ("Mr. Double did not modify or alter his vehicle in order to conceal drugs. Nor did he add or attach anything to his vehicle. He simply found what he presumably believed to be a good hiding place."). The *Double* decision reaches the same conclusion as does the majority although its interpretation of the statute differs from that of the majority.

{¶96} The court in *Double* held, contrary to its plain meaning, that R.C. 2923.241(A)(2) should not be read "to mean that *any* 'container, space, or enclosure that

---

2. It should be emphasized that Thompson only challenged the sufficiency of the evidence against him. Neither in the trial court nor on appeal did he suggest that the hidden compartment statute is ambiguous, overbroad, or otherwise constitutionally infirm.

Case No. 2024-P-0074

conceals, hides, or otherwise prevents the discovery of the contents of the container, space or enclosure' is a '[h]idden compartment.'" *Id.* at ¶ 18. "[S]uch an interpretation of the statute would mean that any opaque container, such as a purse containing drugs, would be a hidden compartment under Section 2923.241(A)(2), regardless of where that container is located within the vehicle," and "[t]hat cannot be what the legislature intended to criminalize when it enacted Section 2923.241." *Id.* The court in *Double* proceeded to reach the conclusion adopted by the majority that a vehicle "which contained original factory equipment with no modifications or additions," cannot, as a matter of law, constitute a "hidden compartment" for purposes of Section 2923.241(A)(2). *Id.*

{¶97} The Ninth District's position that the legislature could not have intended the statute to apply to unmodified factory equipment refers often to the Fifth District's decision in *State v. Gomez*, 2019-Ohio-481 (5th Dist.). In *Gomez*, the court sustained a conviction under the statute where the defendant had placed a "spare tire with a three-sided flap cut into the sidewall" in his vehicle. *Id.* at ¶ 67. The tire was not original to the vehicle and there was testimony that it was a common way of transporting controlled substances. *Id.* at ¶ 5. The court concluded that the defendant had created a space or compartment added to the vehicle. *Id.* at ¶ 68, citing R.C. 2923.241(A)(1)(c). A concurring judge agreed that the evidence supported the conviction but believed that the tire met the basic definition of a hidden compartment without having to consider subsection (c). This judge further opined:

> I hasten to note such interpretation may go far beyond what the legislature envisioned or originally intended by enactment of the statute. I submit transportation of drugs in any container which conceals, hides, or otherwise prevents the discovery of drugs placed therein and then placed it in the vehicle results in a violation of the statute. This would include drugs placed in any opaque container;

Case No. 2024-P-0074

for example, a cooler or a purse if placed anywhere in the vehicle. Perhaps further case law will limit such expansive interpretation of the statue if the legislature chooses not to do so itself.

*Id.* at ¶ 115 (Hoffman, J., concurring).

{¶98}   The *Double* court doubly erred, first, by ignoring the express "is not limited to" language of the statute and, second, by adopting a contrary position based on the dubious interpretation that the statute could be applied to any opaque container. ~~Like the majority,~~ [T]he *Double* court avoided the "but not limited to" language without clearly explaining why.  The court purported to reject the expansive reading of the concurring opinion in *Gomez* that a hidden compartment encompasses any opaque container because "[t]he plain language of the statute … requires more," *i.e.*, that the original factory equipment cannot constitute a hidden compartment unless altered or modified.  *Double* at ¶ 18.  On the other hand, it was implied or hinted that the expansive reading "cannot be what the legislature intended to criminalize when it enacted Section 2923.241," presumably because such reading would be absurd, ambiguous, or constitutionally infirm in some way.  How any of this negates the plainly stated "is not limited to" language is mystifying.

{¶99}   Thus, the *Double* court implied that ignoring the "but not limited to" language was necessary to avoid "unintended" results if the statute applied to any opaque container such as purses.  The suggestion of the concurring judge in *Gomez* that the statute could be applied to any opaque container is not a reasonable interpretation of the statutory language.  Stated otherwise, the court ignored the manifestly plain "is not limited to" language to avoid a result not only unintended but not even reasonable.  Hence the error is two-fold.

Case No. 2024-P-0074

{¶100} This double error is compounded by the majority inasmuch as *Double* was arguably rightly decided for the wrong reason and is, therefore, distinguishable. Because the compartment at issue in *Double* was apparently some sort of access panel, it did not actually conceal or prevent the discovery of its contents. In this case, the faulty reasoning of *Double* produces the wrong result. The compartment at issue here does actively conceal and prevent the discovery of its contents. Unlike the compartment in *Double*, the space in Thompson's vehicle where the controlled substances were located was not designed to store anything or provide access to anything. The very nature of the space would prevent or impede the discovery of its contents. Thus, the present case is distinguishable from *Double* in that the space behind the paneling in Thompson's vehicle concealed its contents whereas the access panel in *Double* was more of a "good hiding place." *Double* at ¶ 17.

***The majority's interpretation of "including but not limited to" is contrary to its plain and ordinary meaning***

{¶101} Whereas the *Double* court concluded that the legislature could not have intended the statute to apply to unmodified factory equipment despite the statutory language, the majority concludes that the "includes, but is not limited to" language actually limits the scope of what constitutes a hidden compartment to those compartments which have been modified, altered, or added/attached to the vehicle. According to the majority, "[t]his phrase modifies the *types* of modifications that can create hidden compartments, not the universe of all concealed spaces." *Supra* at ¶ 71. I cannot agree. The phrase "includes, but is not limited to" does not modify anything, rather, it merely provides specific examples of what may constitute a "hidden compartment." Moreover, it provides these specific examples, which are neither limiting nor exhaustive, in relation to the preceding

Case No. 2024-P-0074

definition of a "hidden compartment," not in relation to "the universe of all concealed spaces."

{¶102} Again, the majority states that, "[w]hen a statute says a term 'includes, but is not limited to' specific examples, it expands the category of things *like* those examples, not the category of all things imaginable." *Supra* at ¶ 71. On the contrary, the Supreme Court of Ohio has repeatedly affirmed the plain, ordinary and obvious import of this phrase: "The statutory phrase 'including, but not limited to,' means that the examples expressly given are 'a *nonexhaustive* list of examples.' (Emphasis sic.)." (Citations omitted.) *State v. Anderson*, 2015-Ohio-2089, ¶ 18; *Moore v. Lorain Metro. Hous. Auth.*, 2009-Ohio-1250, ¶ 24; *State v. Thompson*, 2001-Ohio-1288, ¶ 14. "Examples are typically intended to provide illustrations of a term defined in the statute, but do not act as limitations on that term." *Colbert v. Cleveland*, 2003-Ohio-3319, ¶ 14; *see*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Grace*, 2009-Ohio-5934, ¶ 26 ("the legislature *broadened* the circumstances under which a carrier may preclude coverage for bodily injury or death suffered by an insured, and it expressed its intent to do so by incorporating the phrase 'including but not limited to' when referring to the circumstances under which coverage may be precluded") (emphasis added).

{¶103} To be clear (and as discussed above), a "hidden compartment" *is* "a container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure." R.C. 2923.241(A)(2). That is the complete definition and there is nothing about it that remotely suggests that it only applies to containers, spaces, or enclosures that have been altered, modified, added or attached. To be sure, the statute provides specific examples of "hidden compartments" that have

been altered, modified, added or attached, but expressly states that a "hidden compartment" is "not limited to" examples of this type. That is the only reasonable interpretation of the plain and ordinary language of the statute.

***Conclusion***

{¶104} For the foregoing reasons, this Court should respect the plain and ordinary language of the statute that a hidden compartment includes, but is not limited to, the original factory equipment when it has been modified to hide, conceal, or prevent the discovery of its contents, rather than utilize a non-exclusive list of hidden compartment examples to smuggle in a statutory construction that transforms this list into the exclusive, operating criteria of what defines a hidden compartment. Because the plain and ordinary language of the statute does not mandate that the original factory equipment be modified or altered to constitute a hidden compartment, I respectfully dissent and would affirm Thompson's conviction of the charge.

Case No. 2024-P-0074

**JUDGMENT ENTRY**

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part. Thompson's conviction of designing or operating a vehicle with a hidden compartment used to transport a controlled substance pursuant to R.C. 2923.241(C) is hereby vacated. This case is remanded for further proceedings consistent with the opinion.

Costs to be taxed against the parties equally.

JUDGE ROBERT J. PATTON

JUDGE EUGENE A. LUCCI,
concurs

JUDGE SCOTT LYNCH,
concurs in part and dissents in part with a
Dissenting Opinion

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-P-0074